No. 20,949.

W. P. WEATHERS, *Appellee*, v. THE KANSAS CITY BRIDGE COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. WORKMEN'S COMPENSATION ACT — *Injuries* — *Settlement* — *Mutual Mistake—Setting Aside Release*. Under the workmen's compensation law, an agreement fixing compensation, and a release given on receipt of the amount fixed by the agreement, may be set aside, where the compensation fixed is grossly inadequate and where the parties make the agreement under a mutual mistake as to the nature and extent of the plaintiff's injuries.

2. SAME—*Injuries—Setting Aside Written Release—Mutual Mistake— Instructions*. Under the workmen's compensation law, where an agreement fixing compensation has been made and a release from further liability has been given, it is error to instruct the jury that they may find for the plaintiff if the consideration for the release is grossly inadequate, without, in any way, modifying this condition of recovery; and it is error to instruct the jury that they may find for the plaintiff if he signed the release under a mistaken belief as to the extent of his injuries, and not refer, in any way, to a mistake of the defendant concerning those injuries.

Weathers v. Bridge Co.

3. TRIAL—*Instructions.* Rule followed that instructions must be considered and construed as a whole.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed January 18, 1917. Reversed.

*E. S. McAnany, M. L. Alden, T. M. Van Cleave,* all of Kansas City, and *Frank L. Barry,* of Kansas City, Mo., for the appellant.

*W. W. McCanles, Charles E. Thompson,* and *H. F. Gorsuch,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff recovered judgment under the workmen's compensation law, and the defendant appeals.

Two weeks after the plaintiff was injured, he went on crutches to the office of the defendant and there had a conversation with Howard Treadway, the vice-president and general manager of the defendant company. This conversation can be best shown by quoting from the abstract of the evidence as follows:

"Q. What did you say there? A. I went in and introduced myself and he says, 'Just a minute.' He says, 'Step in that office.' I went in a little office at one side and sat down about five minutes and Mr. Treadway came in and said 'It is too bad for a man to be knocked out right at Christmas times," and I says, 'Yes; pretty bad, but it can't be helped, I suppose.' And we talked there and talked about work and he asked me all the places I had worked for the last 15 years back and the salary I had drawn and why I was working for $2.00 a day when I had worked for more money. He says, 'I wish to the Lord you could go to White Rock, Missouri; I have a job there as water compressor in the boiler,' and I says, 'It would n't look good for me to go on crutches,' and he says, 'No.' And then we talked on other things and he says, 'I do n't want to beat you out of anything, you are right up against it,' and I says, 'Yes; I am strictly up against it.' He says, 'I know you are; Mr. Ryan told me you was;' and he says, 'I think you will be all right to go to work in ten days,' and I says, 'I think so.' And he says, 'I will pay you for your wages for four weeks and by that time I think you will be all ready to go to work,' and I says, 'I hope so because it is very little money.' He says, 'Sure it is little; six dollars a week is not much. That Compensation Act don't bring very much to a man that don't get any more than you get.' He says, 'You won't have to pay the doctor, if you have to you won't have anything left out of six dollars a week,' and he

said, 'I am going to make this check out for you for four weeks,' and he started to make the check out for $28.00 and he changed it and made it for $24 and he says, 'That is right, we don't pay for Sundays.' And he says, 'Now, in case you get along all right what about that?' I says, 'If I get along all right, if I have beaten you out of anything I will give it back to you.' I says, 'Furthermore, I want a job.' He says, 'Oh, sure; I am going to take care of you.' And after he got through he gave me a newspaper laying there on a chair and says, 'You can read that going home.' I says, 'What about that job when I get ready to go to work?' He says, 'I am not going to promise you a job because I may not have any.' He says, 'This is machinery and stuff you know, you can hire with me uptown and nobody else would want to take somebody else's cripple,' and he says, 'I would like to have you get acquainted with my chief foreman; we might be able to use you the year around.'

"Q. He said he would take care of you? A. Yes, sir. I says 'You have my address,' and he says, 'Yes; if anything shows up I will see about it.' I says, 'Now I can about half depend on a job, do I understand you that way,' and he says, 'Well, I am not going to promise you a job because I might not have any.'

. . . . . . . . . . . .

"Q. Well, you finally agreed upon accepting $24 as your compensation and you agreed to execute that release? A. Mr. Treadway said to me, he says, 'Now, here, we called up the doctor and the doctor thinks you will be able to go to work in nine or ten days,' and he says, 'It has been two weeks now' and he says 'I think you will be all right.' Well, I says, 'I am not sure that I will, but I hope that I will.' 'Well,' he says 'in case of a doubt I will just pay you for four weeks, that is at six dollars a week,' and I says 'Well, if I get well before that time I will refund what difference there is,' and he says 'If you don't get well we will take care of you.' And he went on and asked me about the different positions I had held and he says 'You are just the kind of a man I want to get hold of, and I can use you down at this place'—I think it was White Rock, Missouri,—anyway, it was in Missouri—'on a water compressor in a boiler job,' and he says 'I want you to get acquainted with my chief foreman. We do work all over the country and a man that can go ahead and handle an engine or bunch of men or concrete mixer or do any other of this construction work I want to keep him and I will take care of you.' I says 'All right; I want a job, that is what I want and I have got to have it,' and he says 'I will take care of you.' And he started to write out a check for $28.00 and he says 'Well, I only pay for six days; I am not paying for Sundays,' and he changed it to $24.00. And he says 'I don't see how you fellows live working for two dollars a day.' And he says 'You haven't always done that,' and I says 'No, sir; I haven't. I worked for C. C. Smith and Walter Diggs, foreman,' and he says 'I will try and keep you in mind.' 'You have my address' I says, and he says 'Yes,' and I says 'I will see Mr. Ryan,' and he says 'you see me, you don't need to see Mr. Ryan, you see Treadway; I am the man to see,' and I says 'All right.' And we talked there and

he wondered how I could live and work for $2.00 a day. He says 'If you had gone to see',—he says 'If the doctor came to see you three times you are out six dollars at the best, if you don't have to have a prescription.' He says 'A man that makes the money I make, a good salary, I can kinda stand it,' and he handed me this check for $24.00 and I put it in my pocket. I signed it, I think in the presence of the stenographer. The stenographer came in and he asked him to make a typewritten one, I think he made two or three copies. That was the first time I saw him and no one had been in the office but Treadway and myself, so when he handed me the check and I signed up and he says 'I will see you again,' and handed me the newspaper."

The release signed by the plaintiff is as follows:

"FINAL RECEIPT

"For Compensation Paid Under the Workmen's Compensation Law State of Kansas.

KANSAS CITY, MO., DEC. 14, 1915.

"Received of Kansas City Bridge Company the sum of Twenty-four & no/100 Dollars ($24.00) said amount being such part of my weekly wages for the period of four weeks from the 30th day of November, 1915, to the 28th day of December, 1915 (both days included) as I am entitled to and making in all, with the weekly payments already received by me, the total sum of Twenty-four & no/100 Dollars ($24.00) such payment being the final payment of Compensation under the WORKMEN'S COMPENSATION LAW of Kansas and in consideration of which I hereby release and forever discharge the said Kansas City Bridge Company heirs, successors and assigns, from any and all actions, causes of actions, claims and demands, for, upon, or by reason of any damage, loss, injury, suffering and disfigurement which heretofore has been or which hereafter may be sustained by me in consequence of an accident suffered by me on or about the 30th day of November, 1915, while in the employ of Kansas City Bridge Company.

"Witness my hand and seal, this 14 day of December, 1915.

WM. P. WEATHERS."

The plaintiff was injured November 30, 1915. He walked on crutches until December 24, 1915, and walked with a cane until the 17th of the following April. The petition alleges that the parties were operating under the workmen's compensation law, and alleges the plaintiff's employment and his injury. The answer sets up the release. In his reply the plaintiff alleges that the consideration for the release was grossly inadequate. At the close of the evidence the plaintiff requested permission to amend his reply so as to show that the release was signed by the plaintiff through a mistake of both parties as to the seriousness of the plaintiff's injuries. Permission to amend

was granted and in the amendment the plaintiff alleges that at the time he executed the release he did not know his physical condition and the extent of his injuries, and that he did not believe his injuries were serious and permanent. The plaintiff does not allege a mutual mistake as to the extent of his injuries. He alleges his mistake but does not the mistake of the defendant. The pleadings should and will be considered as though a mutual mistake were alleged.

1. The defendant demurred to the plaintiff's evidence and at the close of all the evidence asked the court to instruct the jury to return a verdict for the defendant. There was evidence other than that above set out, which tended to show that the defendant's vice president and general manager, and the physician called by the defendant to treat the plaintiff at the time of his injury, were mistaken as to the nature and extent of those injuries. That physician, E. D. Williams, who reached the plaintiff a few minutes after the accident, testified, in substance, that he examined the plaintiff's foot that it was swollen and quite tender to the touch and had a small abrasion or roughening of the skin on the outside of the ankle; and that he found no fracture of any bone or torn ligaments of any kind. Doctor Williams examined the plaintiff's foot and treated it again on the next day, and once afterwards, on December 3. At the trial Doctor Palmer examined the plaintiff's foot and testified that one of the bones of the foot had been broken, and also testified that some of the ligaments attached to this bone were ruptured or torn. There was evidence that tended to show a mutual mistake as to the nature and extent of the plaintiff's injuries; that on this mistake the release was based; and that the consideration for the release was grossly inadequate. A mutual mistake as to the extent of existing injuries is such a mistake as will justify setting aside a release of liability on account of those injuries. (*Dominicis v. United States Casualty Co.*, 132 App. Div. 553; *Nelson v. Chicago & N. W. Ry. Co.*, 111 Minn. 193; *St. Louis, I. M. & S. Ry. Co. v. Hambright*, 87 Ark. 614; *Great Northern Ry. Co. v. Fowler*, 136 Fed. 118; *Johnson v. Chicago, M. & St. P. Ry. Co.*, 224 Fed. 196; 2 Black on Rescission and Cancellation, § 391, p. 978.)

The release was based on the defendant's agreement to pay the plaintiff twenty-four dollars compensation because of the

injuries he had sustained. The release followed the defendant's performance of that agreement. A release following an agreement as to compensation is no defense to an action under the workmen's compensation law, where that agreement is based on a mutual mistake of fact and provides for a grossly inadequate compensation.

2. Complaint is made of the following instructions given to the jury:

"10. The release introduced in evidence, on its face, appears to be valid and binding upon the plaintiff and defendant; and therefore before you can find for the plaintiff he must prove, by the preponderance of the evidence, substantially as alleged in his reply that the consideration of said release was grossly inadequate; or that he signed said release under a mistaken belief as to the extent of his injuries, that he did not believe his injuries serious and permanent and that defendant's doctor and vice-president told plaintiff his injuries were not permanent in their character.

"12. If you find from the preponderance of the evidence that said release was obtained under either one of the conditions stated in instruction number 10, that is, that it was grossly inadequate in consideration or was executed by plaintiff under a mistake as to the character of his injuries, then it will be for you to determine whether or not the plaintiff was wholly or partially incapacitated from work as the result of the injury, if any, he received at the time in question, while in defendant's employ."

The tenth instruction tells the jury, in substance, that they may find for the plaintiff if the consideration for the release was grossly inadequate. This compels further consideration of the release. By that instrument the plaintiff and the defendant agreed on twenty-four dollars as the total compensation to be paid to the plaintiff on account of the injuries received by him. Section 23 of the act (Laws 1911, ch. 218) provides that: "Compensation due under this act may be settled by agreement." The agreement contained in the release is such an agreement as is contemplated by this section. Section 29 of the act prescribes the conditions under which an agreement may be canceled. An agreement may be canceled if it is shown to the satisfaction of the court that the workman has returned to work and is receiving approximately the same or higher wages as or than he did before the accident, or that the agreement has been obtained by fraud or undue influence. The statute does not provide that an agreement may be canceled if it is shown that the compensation fixed is

grossly inadequate or grossly excessive. An award of arbitrators may be set aside if it is grossly inadequate or grossly excessive. The statute contemplates that when parties agree concerning compensation they will do so intelligently, as the law directs, with knowledge of all the facts, neither taking any undue advantage of the other, and each undertaking to ascertain the amount of compensation that should be paid under the statute. Sections 23 and 28 of the act mention a release. A release, as contemplated in this statute, is a discharge of the defendant by the plaintiff from further liability under an agreement of the parties, under an award of arbitrators, or under a judgment of a court which has fixed the amount of compensation that should be paid. The release now in controversy is such an agreement as is contemplated by the statute; it is a receipt for the amount agreed to be paid, and is a release from all further liability for compensation. This instrument, being an agreement, may be set aside for either of the reasons named in the statute concerning agreements, and it may be set aside for any other reason known to the common law. When the agreement for compensation is set aside the release based on the agreement will also be set aside. Grossly inadequate consideration alone is not sufficient reason for setting aside either the agreement or the release (*Odrowski v. Swift & Co.*, ante, p. 163) ; but grossly inadequate consideration and mutual mistake of fact as to the extent of the injuries are sufficient to avoid the effect of the agreement and of the release.

That part of the instruction which says, in substance, that the plaintiff can recover if he signed the release under a mistaken belief as to the extent of his injuries, is not correct. He can recover when he proves that the agreement and release were executed under a mistake of both the plaintiff and the defendant as to the extent of the plaintiff's injuries, if he also proves that the amount already paid him is not adequate compensation under the law.

On account of these errors in the instructions the judgment must be reversed.

3. The defendant complains of the following language contained in one of the instructions :

"If you find from the evidence that the plaintiff was totally or partially disabled from work as the result of the injury complained of in his

petition for a period exceeding two weeks after such injury, it will be your duty to return a verdict in favor of the plaintiff."

Defendant argues that this left nothing for the jury to consider. The language quoted is a very small part of the instructions given and must be construed with the remainder of the instructions and be modified thereby. When so construed and modified the instruction is not erroneous.

The judgment is reversed and the trial court is directed to permit the plaintiff to amend his reply so as to show a mutual mistake of fact as to the extent of the plaintiff's injuries, and then to proceed with the trial of the cause.

JOHNSTON, C. J. (dissenting) : In my view no distinction was intended to be made between agreements and awards so far as the power of the court to modify and cancel them is concerned. Under section 29 of the act they may be canceled for fraud or undue influence or where the amount agreed upon or the award is either grossly inadequate or grossly excessive. In this case there was not only mutual mistake but the amount of compensation fixed was grossly inadequate and, in my opinion, this afforded ground for setting aside the agreement which has been designated as a release.