No. 21,514.

WILLIAM SMITH, *Appellee*, v. THE CITY OF KANSAS CITY, *Appellant*.

### SYLLABUS BY THE COURT.

COMPENSATION ACT—*Personal Injuries—Written Release—Mutual Mistake.* The paper relied on as a release appears to have been signed when the parties were mutually mistaken as to the extent of plaintiff's injuries. The sum therein named being manifestly inadequate, such instrument is not binding.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed February 9, 1918. Affirmed.

*E. S. McAnany, M. L. Alden, Thomas M. Van Cleave,* all of Kansas City, and *Frank L. Barry,* of Kansas City, Mo., for the appellant; *Samuel Maher,* of Kansas City, of counsel.

*W. W. McCanles, Charles E. Thompson,* and *H. F. Gorsuch,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

WEST, J.: The city appeals from a judgment recovered by the plaintiff for damages caused by being trampled while in the employ of the city caring for horses used in connection with its fire department. He alleged that he was 65 years old and was making $2 a day. The injury was on February 15, 1916, and on the 24th of March, thereafter, he drew $33.75 and signed a paper called a final receipt, for which he alleges there was no consideration, as the amount paid him was only a part of the compensation due. He also pleaded inadequacy, fraud, and mutual mistake. The jury were charged that the only ground upon which the release could be set aside was that of mutual mistake as to the extent of his injuries, and gross inadequacy. The verdict was for $590.25. The plaintiff is an unlettered man and spent 30 years of his life with Barnum's circus. He testified to receiving injuries on the legs, and a rupture, and also injury in the back; that he wore a bandage on one leg for three or four weeks; that he was in bed off and on for ten or twelve days, then got up on crutches and walked around; that he attempted to do work at other places and had been discharged for physical inability; that the city doctor came to see him, did nothing for one leg, and bandaged the other "and put a little splinter on it," and said he would be up in two or three days. Eleven or twelve days thereafter he sent for another doctor, whom he saw several times. This doctor advised him not to do any work until he got better. He twice saw still another doctor who gave him some medicine and, like the one just mentioned, told him he was ruptured. He went to numerous other physicians, but appears, nevertheless, to have taken charge of his own case to quite an extent. He testified that he was told to go over and draw his wages, which he supposed he was doing when he signed the paper. At the time of trial he testified that he had not done anything for five or six months until the preceding week. He seems to have tried to work at numerous places, but failed on account of his inability to perform the required tasks. When he signed the paper he had not attempted to do any work, and did not know what effect his injury would have upon his ability to work. The superintendent of the waterworks testified that he went to

see the plaintiff about ten days after the injury and later, when he came to the city hall, that he gave him the address of Mr. Barry, an attorney in Kansas City, Mo., who was representing the city; that the plaintiff thought he would be able to go back to work the following Monday morning. The paper recites the payment of $33.75—

"Said amount being such part of my weekly wages for the period of four and one-half weeks from the 23d day of February, 1916, to the 25th day of March, 1916 (both dates included) as I am entitled to, and making in all with the weekly payments already received by me, the total sum of Thirty-three and 75/100 Dollars ($33.75) such payment being the final payment of compensation under the WORKMEN'S COMPENSATION LAW OF KANSAS."

It recites the release and discharge of all claims and demands, past, present, and future. Mr. Barry testified:

"Q. $15.00 a week and you allowed him seven dollars and a half a week? A. Yes, sir.

"Q. It had then been four and one-half weeks that he had been off? A. No; for four and one-half weeks which would have been up to the day he said he was going to return to work.

. . . . . . . . . . .

"Q. Well, we will assume you figured it will be four and one-half weeks, then he would actually be entitled to $33.75 up to the date he went to work? A. Well, you can figure it.

. . . . . . . . . . .

"Q. You gave him what he was entitled to? A. Under the law I gave just what that says.

"Q. You gave him just what he was entitled to up to the day he was going to work? A. Yes, sir.

"Q. Then you took the release from him for the rest of the eight years, didn't you? A. No, sir; I didn't.

. . . . . . . . . . .

"Q. In addition to what he was entitled to you took a release of this? A. I took that document, whatever you have in your hand, and it will speak for itself."

Enough of the evidence has been recited to show that at the time the paper was signed the plaintiff thought he would be able to go to work again for the city. It is apparent from Mr. Barry's testimony that he thought likewise and intended by the use of the instrument in question to foreclose any further claim for the injury already sustained. Acting in good faith, as he seems to have done, it is but natural to assume that both he and the plaintiff believed that the material results of the

injury had disappeared, and that no substantial difficulty on account thereof would thereafter arise in plaintiff's doing his former work. It is not only fair, but reasonably clear, therefore, that both parties were acting under a misapprehension of a real condition—in other words, were mutually mistaken—and it must go without saying that in view of the real condition the amount paid was, beyond all question, inadequate. No reason in equity or in law appears why the mistake should not be corrected and the real injury be compensated for. Of course, there is the usual dispute as to the extent of the injury, and the usual conflict in the medical evidence, but these things were for the jury, and there appears in the record sufficient basis for their conclusions.

The judgment is affirmed.