No. 24,068.

MARGARET CRAWN, *Appellee*, v. THE FOWLER PACKING COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. COMPENSATION ACT—*Release Given—Mutual Mistake of Fact.* Where a settlement fixing compensation of an injured workman was made and a release given to the employer under a mutual mistake of the parties as to the nature and extent of the injuries of the workman, and the compensation agreed upon is grossly inadequate, the agreement and release may be treated as nullities.

2. SAME—*Evidence Establishes Mutual Mistake.* The evidence examined, and it is held that it is sufficient to establish a mutual mistake of the parties in respect to the injuries of the plaintiff.

3. SAME—*Arbitration by Consent—Authority of Arbitrator.* Where an arbitrator is appointed by consent, and upon the request of the defendant, the issue of mutual mistake in the settlement and release is expressly referred to the arbitrator, and evidence upon the question is presented by the parties, he is vested with authority to determine the issue and, upon sufficient evidence, to decide that the release is a nullity, and to award adequate compensation as if the invalid release had not been executed.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. MC-CAMISH, judge. Opinion filed June 10, 1922. Affirmed.

*William G. Holt*, and *P. W. Croker*, both of Kansas City, for the appellant.
*H. E. Dean*, of Kansas City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an appeal from an award made under the workmen's compensation act. While Margaret Crawn was in the employment of the Fowler Packing Company, she accidentally

fell from one floor level to a lower one which resulted in a fracture of the left femur in the region of the hip joint, an injury so serious in its nature as to cause total permanent disability. The accident occurred April 14, 1919, and on December 11, 1919, the defendant paid her $50 as compensation, and she gave a receipt for the same. On January 28, 1920, another payment of $50 was made, and a receipt for the same was given. On April 6, 1920, an additional payment of $244.85 was made to her which was the amount due as compensation up to that time at the rate of compensation payable in such a case, based on her average weekly wages for the year preceding the injury.

A controversy arose as to the compensation due, and the plaintiff asked for the appointment of an arbitrator. At the request of the defendant the following questions, in substance, were referred to the arbitrator for determination:

1. Was the release given by the plaintiff a binding one?

2. Was there any mutual mistake of fact between the parties when the release was taken?

3. Was there any fraud or deceit on the part of the defendant in obtaining the release?

4. Was the plaintiff suffering from any mental disability when the release was signed?

5. Is plaintiff entitled to any additional compensation on account of her injury?

Evidence on the questions was submitted. After stating the nature of the injuries sustained, and that they had resulted in total permanent disability, the arbitrator found that plaintiff's average weekly wages for the year preceding the accident were $16.57, that two payments of $50 each had been made and receipted for as has been stated, and that a third payment had been made of $244.85. On the receipt of it, plaintiff had executed a release of all claims on account of her injury. It was further found that the amount paid was grossly inadequate for the injury sustained, and that the release was made under a mutual mistake of fact of both parties as to the nature and extent of plaintiff's injuries, and was therefore not of binding force. There was a further finding that plaintiff had been taken to a hospital by the defendant and treated by a physician and surgeon employed by the defendant, and that all of the hospital, physician and surgeon's bills, as well as for nursing and medicines, were paid by the defendant, and that the payments on that account

exceeded the amount allowed by statute for these purposes. Plaintiff was awarded in a lump sum $855.70, less the amount which had been previously paid as compensation up to the time of arbitration, which amount was sixty per cent of her average weekly earnings, and she was also allowed for the eight-year period after the injury compensation at the rate of $9.95 per week. There was also a finding that there was no evidence of fraud or deceit practised in the settlement and no evidence as to the mental disability of the plaintiff when it was made. The court approved the award. The defendant contends that the release was valid and binding, and that the trial court erred in refusing to set aside the award.

The contention that there was no evidence of mutual mistake cannot be upheld. The evidence tends to show that both parties to the settlement proceeded on the theory that plaintiff had about recovered from her injury and would be able to return to work within a few days, and this is confirmed to some extent by the fact that the compensation agreed upon was the amount due up to the time of settlement. The defendant's physician took plaintiff home from the hospital, told her that she had recovered from her injuries and all that she had to do thereafter was to learn to walk. Plaintiff told the agent of defendant, who made the settlement, that she was ready to go to work and thought she would be able to do so within a week or two. He stated to her that the doctor had said that she was all right and in good condition when he brought her home from the hospital, and he testified that the payment was made on the basis that she was then ready to go back to work. It is true, he also testified, that the release was taken as a full payment of her claim against the defendant. There is a controversy as to whether the terms of the release were read and understood by the plaintiff and she stated that she supposed she was signing a receipt for the accrued compensation as she had done when former payments were made. However that may have been, it is manifest from the evidence that all concerned were mistaken as to the nature of her injuries, and that plaintiff entertained the opinion given to her by the doctor of defendant that she had recovered and she rested in this opinion until an examination was made by three other doctors, which revealed the fact that her injury was permanent in character, and that she would be a cripple for life. There was not only mutual mistake of the parties, but the consideration for the release was grossly inadequate. It has been decided that:

"A mutual mistake as to the extent of existing injuries, is such a mistake as will justify setting aside a release of liability on account of those injuries. . . . A release following an agreement as to compensation is no defense to an action under the Workmen's Compensation Law where that agreement is based on a mutual mistake of fact, and provides for a grossly inadequate compensation." (*Weathers v. Bridge Co.*, 99 Kan. 632, 636, 637, 162 Pac. 957. See, also, *Smith v. Kansas City*, 102 Kan. 518, 171 Pac. 9; *Wolf v. Packing Co.*, 105 Kan. 317, 182 Pac. 395.)

It is further contended that the arbitrator was without authority to consider any question relating to the validity of the release. In providing for an arbitrator the person agreed upon by the parties was appointed by the court. The defendant, as we have seen, made a special request that certain questions other than the amount of compensation, should be referred to and determined by the arbitrator. Several of these questions related to the validity of the release, including whether it had been obtained by mutual mistake. Without objection evidence was presented on this issue, and also as to the adequacy of the consideration that had been given for the release. After asking for a reference and a determination of the question, the defendant is hardly in a position to challenge the authority of the arbitrator to determine it. It is contended by the defendant that the compensation act does not expressly give an arbitrator power to pass on the validity of a release, even if the parties expressly request a submission and determination of the question. It is insisted that only a court having general equity jurisdiction can cancel a settlement and release on the ground of mutual mistake. The compensation act recognizes that questions relating to compensation, other than the amount of the same, may be referred to the arbitrator. After providing for the appointment of an arbitrator by consent, or upon the order of the court, it is provided:

"The consent to arbitration shall be in writing and signed by the parties and may limit the fees of the arbitrator, and the time within which the award must be made, and unless such consent or order of appointment expressly refers other questions, only the question of the amount of compensation shall be deemed to be in issue," etc. (Laws 1917, ch. 226, § 11.)

Any question touching the right of a workman to compensation which has been expressly referred may, therefore, be considered and determined by the arbitrator. The arbitrator is in a sense an arm of the district court and is subject to the supervision of that court, and his decision may be reviewed by it upon certain grounds. (Laws 1917, ch. 226, § 16.) He is vested with judicial authority and

his decision is binding upon the parties unless it is modified or set aside upon review by the court. It is competent for the legislature to confer judicial power upon any tribunal or court inferior to the supreme court, and even if an arbitrator is regarded as an independent court, no reason is seen why he may not be vested with jurisdiction to hear and determine any question pertaining to the right of a workman to compensation which has been expressly referred to him in the order of appointment.

The decision and award of the arbitrator were brought before the trial court upon a motion to set them aside upon the grounds that the evidence did not establish that the settlement or release were made under a mutual mistake, and that there was no basis for holding them to be without binding force. The decision of the arbitrator was approved by the court, and judgment for plaintiff was accordingly given.

Judgment affirmed.