No. 24,234.

DONALD RIDER, *Appellee*, v. THE KANSAS CITY TERMINAL RAILWAY COMPANY and JOHN BARTON PAYNE, Director-general, et al., *Appellants*.

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Personal Injuries to Locomotive Fireman—Written Release—Mutual Mistake—Fact for Jury.* Where a locomotive fireman, for the purpose of assisting the crew to take water into the engine, stepped from the cab of his engine onto the covering of a manhole which was defective, and fell astride of the lid into the manhole, suffering injuries to his testicles and groin; was attended by the physician of the company, and after treatment for a month by the physician, was given a surgeon's discharge from treatment to report for duty in one day, and directed by the physician to present the discharge to the claim agent of the railroad company and arrange to go to work, both the fireman and the physician believing the injury was only temporary and that the fireman was cured; and, where the fireman presents the surgeon's discharge to the claim agent of the company, makes settlement for an amount about equal to his wages for the time he has been laid up, and is induced to sign a release relieving the company of all liability for such injury; and where it afterwards developed that the injury was of a serious and permanent nature preventing him from working for more than a year, and for the cure of which injury he finally underwent an operation, *held,* that a judgment supporting the general verdict of a jury finding the release to have been executed by mutual mistake of the parties will not be reversed.

2. SAME. The evidence examined, and held sufficient for submission to the jury on the question of mutual mistake as to the nature and extent of plaintiff's injury at the time of the execution of the release.

3. SAME—*Proper Instructions.* The instructions examined and found to have been justified by the evidence and to fairly present the matters to the jury.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed February 10, 1923. Affirmed.

*O. L. Miller,* of Kansas City, *John H. Lathrop* and *S. W. Sawyer,* both of Kansas City, Mo., for the appellants.

*Charles A. Blair,* of Kansas City, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: Defendant appeals from a judgment of $2,800, awarded plaintiff by the district court of Wyandotte county on account of damages sustained through falling into a manhole.

Trial was to a jury. The principal question was as to whether or not plaintiff was bound by the release which he executed to the company. Plaintiff was a locomotive fireman for defendant at a salary of about $180 per month. About 9 o'clock in the evening of March 12, 1919, he stepped from his engine to assist the crew in taking water. He stepped on one edge of the cover or lid of a manhole three or four feet from the track which tipped over and he fell into the hole astraddle of the cover or lid, thereby inflicting the injuries complained of. He was taken to a near-by rest room for a short time and then conveyed to his home. The next morning he was attended by Dr. Hayward, physician of defendant; was in bed most of the time during the next two days, during which time Dr. Hayward gave him the necessary medical treatment. He was told by Dr. Hayward that as soon as he could walk he should see Dr. Pickard, the main physician of defendant at the Union Station, and on the 17th of March he visited Dr. Pickard and began receiving treatment from him. This treatment continued up until the 8th day of April, when plaintiff was given a surgeon's discharge by Dr. Pickard. Plaintiff testified that Dr. Pickard said to him that, "I was all right and O. K. to go to work; and for me to go in and see Mr. Carlson (defendant's claim agent) and get things straightened up and go to work." The surgeon's discharge certificate was as follows:

Rider v. Railway Co.

"Form 157.

"Kansas City Terminal Railway Company,

Surgeon's Discharge Certificate.

4-8-1919.

*"To Jno. Carlson:*

"The bearer, D. A. Rider, occupation, fireman at ............................................, has been under my professional care since 3-17-1919, and is hereby discharged from treatment, and may report for duty in 1 days.

M. W. Pickard, *Surgeon."*

"This certificate to be filled out by the surgeon and given to the employe, who will present it in person to his superior officer."

Plaintiff took this certificate to Mr. Carlson and had negotiations for a settlement which were concluded April 14, at which time plaintiff received $180, and signed the release in question. It contained these statements:

"I do hereby compromise said claim and do release and forever discharge (naming the director-general, the Kansas City Terminal Railway Company and other railroad companies) from any and all liability for all claims for all injuries, including those that may hereafter develop, as well as those now apparent, and also do release and discharge them from all causes of actions and claims for injuries and damages, which I have, or might have, arising out of such injuries, either to my person or property, and from all claims, demands or causes of action whatsoever which I may have against them, and do hereby acknowledge full satisfaction of all such liability and causes of action, it being the intention of the parties that all matters of difference between them shall be and are hereby compromised and settled.

"It is expressly understood and agreed that the above-named sum paid is the sole consideration of this release and the consideration stated herein is contractual and not a mere recital; and all agreements and understandings between the parties are embodied and expressed herein; and no promise or representation is or has been made relative to future employment.

"In making this settlement I do not rely upon any statement of any doctor, physician or surgeon as to what my physical condition was, is, or will be in the future, as a result of my injuries, and I do not make this settlement because of what anyone has told me about what condition is or will be.

"I have read this release. I know that I am settling for everything and that no representations of any kind have been made to me."

After executing the release, plaintiff was given a note by Mr. Carlson to the master mechanic, being told by Mr. Carlson to "Take it down to Mr. New and go to work." He took the note to Mr. New, but was not permitted to resume work. The testimony shows that plaintiff had not recovered. The following appears in the record:

"Q. Now, what was your condition—after about the 15th of March up until December? A. Well, at times I was in pretty fair condition, and at other times I was clear down, and wasn't able to get on my feet at all.

"Q. Now, what was the condition of your testicle with reference to being swollen? A. Well, at times, it would swell up considerably, then it would be lots worse at times than at other times when I was on my feet—just depend on what I done. If I done anything that I strained myself the swelling would come back and would be so bad that I couldn't walk.

"Q. Were you confined to your bed any part of that time? A. Yes, sir.

"Q. About how much? A. Well, that depends—sometimes one day at a time, and other times as high as three weeks at a time.

"Q. Who took care of you during that time? A. My wife, mostly."

The evidence further shows that late in the fall the plaintiff had improved to such an extent that Dr. Pickard, after examining him, again sent him back to work. He worked something like six weeks or two months, when the swelling of the testicle came back and again incapacitated him from work. The company again sent Dr. Hayward out to give him the necessary medical treatment and attention, and the evidence shows that from February until some time in August the plaintiff gradually grew worse. In regard to his condition from February until August, plaintiff testified as follows:

"Why, I was getting in worse shape. The swelling seemed to increase and get larger all the time, and the pain was more severe.

"Q. How much of the time was you confined to your bed at any time? A. Three weeks was the longest at any one time until I went to the hospital."

Plaintiff was operated upon in August, after the operating surgeon had drained five teacupfuls of pus from his testicle and groin.

These questions were asked and answers given:

"Q. Now, Mr. Rider, I will ask you to state if at the time you signed this release dated the 14th of April, 1919, if you had known or believed that you had not recovered from the injury that you received on or about the 12th day of March . . . that you would not be able to work for some time, and that you would have to undergo an operation before you was cured, I will ask you to state whether or not you would have signed that release. A. No, sir. I wouldn't have signed the release if I hadn't thought I was able to go back to work."

It is contended by the defendant that plaintiff was not acting in good faith; that on the day after the injury, "he went to the office of Dr. Russell (his family physician) for treatment for his injuries and made several visits to him and received treatment; that, as a witness he was evasive in his answers relative to treatments received from Dr. Russell; that, from the time of the injury up until December, when plaintiff resumed work with defendant, he was

Rider v. Railway Co.

operating a coal yard; that there was doubt as to whether or not there was a formation of pus in the region of the injury," and other claims of like nature. The defendant, however, produced no testimony to dispute plaintiff's claim. These questions were all considered by the jury under sufficient instructions from the court and decided adversely to defendant's contention. On his part, plaintiff contends that, not only was he mistaken as to the extent of his injury at the time of executing the release, but that defendant's physician who had charge of his case was also mistaken; that it was a mutual mistake of both parties.

Defendant complains of the action of the trial court—1st. In overruling defendant's demurrer to plaintiff's evidence. 2d. In denying defendant's request for peremptory instruction in favor of the defendants; and 3d. Because of certain instructions given to the jury.

After the last assignment defendant states: "Our complaint under this assignment is that there was no evidence in the case justifying the court in submitting to the jury any question touching the accident or involving the validity of the release."

It will be seen that all the assignments of error go directly to the validity or invalidity of the release. In our opinion the instructions given were justified by the evidence and fairly presented the matter to the jury.

In the case of *Smith v. Kansas City*, 102 Kan. 518, 171 Pac. 9, the court used this language:

"Of course, there is the usual dispute as to the extent of the injury, and the usual conflict in the medical evidence, but these things were for the jury, and there appears in the record sufficient basis for their conclusions." (p. 521.)

In *Miller v. Gas & Fuel Co.*, 108 Kan. 124, 193 Pac. 896, this court said:

"If the plaintiff had been discharged from the hospital with the assurance that he was cured and would soon have normal use of his arm, this court would regard the doctor's statement to that effect as one of fact. (*Weathers v. Bridge Co.*, 99 Kan. 632, 162 Pac. 957; *Smith v. Kansas City*, 102 Kan. 518, 171 Pac. 9; *Wolf v. Packing Co.*, 105 Kan. 317, 182 Pac. 395.)" (p. 129.)

The evidence was sufficient to take the case to the jury on the question as to whether or not plaintiff and defendant were mutually mistaken as to the nature and extent of plaintiff's injury at the time the release was executed.

In *Parrott v. Railway Co.*, 111 Kan. 375, 207 Pac. 777, this language was used:

"It is manifest that the release was executed by the plaintiff in the belief that the injury was slight, and that its effect would pass within a few days. He was induced to think so by the statement of the doctor that the soreness would soon pass away. Plaintiff testified that he had 'implicit faith in Dr. Dingess and believed what he said and believed he would be well in a few days.' If the statements of the doctor were honestly made he was likewise mistaken as to the nature of the injury and it may be inferred that the claim agent who coöperated with the doctor did not understand that it was as serious as it turned out to be. The nominal amounts proposed in settlement of the claim and the amount finally agreed upon tends to show that the claim agent and the doctor both regarded the injury as slight and temporary. The trifling consideration given in payment of a serious and permanent injury argues strongly that there was either a mistake of facts on their part, or that the release was fraudulently procured. Assuming that all were acting in good faith, it is manifest from the evidence that they were mistaken as to the character of the injury, and that under the circumstances the release was not binding." (p. 377.)

There are numerous authorities which sustain an avoidance of this release on account of the mistake of fact. See *Wolf v. Packing Co.*, 105 Kan. 317, 182 Pac. 395; *Crawn v. Packing Co.*, 111 Kan. 573, 207 Pac. 793; *Bertha v. Regal Motor Car Co.*, 180 Mich. 51, 146 N. W. 389; *Great Northern Ry. Co. v. Fowler*, 136 Fed. Rep. 118.

We see no reversible error. The judgment is affirmed.