SOFIA POTI *v.* NEW ENGLAND ROAD MACHINERY COMPANY.

*Francis W. Johnston,* for the plaintiff.

*Roy M. Pickard,* for the defendant.

ALLEN, J. The law under which service was made provides in substance that a non-resident's operation of a motor vehicle on any highway within the state shall be deemed equivalent to the appointment of the commissioner of motor vehicles as his agent upon whom may be served process in any action arising out of any accident in which he may be involved while thus operating his motor vehicle, and that such operation signifies his agreement that such process so served shall amount to personal service on him within the state provided the commissioner mails him notice of it.

The law is practically identical with one in Massachusetts, which has been held constitutional both in that state and by the United States supreme court. *Pawloski* v. *Hess*, 250 Mass. 22; s. c., 253 Mass. 478; s. c., 274 U. S. 352. No point is made that any constitutional question in any particular not considered in that case is here raised, and its authority is affirmed.

The suggestion that the law requires the acceptance of an impossible condition as an actual one, because the non-resident's appointment of the commissioner as his agent is contrary to the fact, and that the law thus creates a relation when none exists, fails to recognize the voluntary entrance of the non-resident on our highways as his act accepting its legal consequences, whatever they may be. The statute does not declare the commissioner's authority as given in terms by the non-resident but describes the appointment as the equivalent in significance of express authority from the non-resident. It is made a condition of a non-resident's use of our highways with a motor vehicle that he may not be heard to deny the commissioner's authority, and the statute creates no relation contrary to the fact but merely bars disproof of it.

In a broader way, the constitutional issue being met, any methods of service prescribed by the legislature are valid, and do not depend upon the defendant's consent to it whether he be resident or non-resident. And the phraseology of the legislation in describing the commissioner as the defendant's agent is not of importance.

The service being valid, the question of the effect of the condition of non-waiver of the exception to the ruling relative to service, which the defendant sought to attach to its general appearance so as to avoid the loss of the exception, does not invite consideration.

The exception to the cancelation of the release on the ground of mutual mistake depends upon the sufficiency of the evidence to support the findings that there was such a mistake and that it entered into the making of the release as a material element. The defendant takes the position that it "bought its peace" and that the case is therefore on all fours with that of *Cogswell* v. *Railroad*, 78 N. H. 379. It is claimed that the purchase of peace is a necessary inference from the adjuster's testimony that liability was denied when the settlement was made. It does not appear, however, that the court adopted the testimony or at best considered the denial if made as more than an argument in an effort to make the best settlement possible. More broadly, purchase of peace in the sense of its distinction from payment of damages means a settlement whether or not the parties are

mistaken as to liability and as to the nature and extent of the injury. In one sense there is a purchase of peace in every settlement, but as expressing a test of the binding force of a release in spite of mutual mistake, it means that the parties in making the release agree in effect that it shall not be set aside for such a mistake. In general definition it negatives an understanding that the issues of liability and results of the injury are of the essence of making the release. In *Cogswell* v. *Railroad, supra,* it was expressly found that both parties understood that the release was "intended to settle once and for all every claim which Emery [the person injured] had or might have in the future growing out of this accident," and it followed that "The extent of Emery's injury did not affect the subject matter of the contract," to avoid litigation rather than to give compensation for damages. Compensation being given, litigation is avoided as an incidental result. But even if the result is sought, yet if it is sought to be accomplished by means of compensation, then a material mistake in the measurement of compensation gives the right to have the release canceled, on the theory of cancelation for mutual mistake applicable to contracts generally. *McIsaac* v. *McMurray,* 77 N. H. 466. The evidence here fully justifies the finding that the parties settled on the basis of giving compensation rather than of avoiding litigation, as their underlying purpose.

The further point is taken that the evidence tends to show no mistake on account of which cancelation will be ordered, but that the mistake as to the extent of the injury is merely matter of opinion. It is said in *McIsaac* v. *McMurray, supra,* 475: "It is probably true that a mistake in forming an opinion upon fully disclosed facts furnishes no ground for the interposition of equity. This idea is well expressed in 34 Cyc. 1058, 1059, as follows: 'A release may . . . be avoided for a mutual mistake of a past or present fact, material to the agreement; but such an effect is not produced by a mistake in prophecy or in opinion, or by mistake in belief relative to an uncertain future event, as, for instance, the probable developments from and permanency of a known injury.'"

Distinction between the extent of a known injury as an existing fact and its consequences as a matter of opinion may perhaps appear a narrow one. Opinion as to the extent of an injury is often so closely allied with opinion as to its consequences that the separate identity of the opinions is not readily separable, with the result that the opinion as to extent is seemingly merged into and forms part of the opinion as to consequences. But analysis between identity and

relationship manifests the differentiation, and it does not follow that an opinion as to the extent of an injury is part of the opinion as to consequences merely because the latter is predicated upon the former. The opinions are in reality separate, one relates to facts of the past and present, and the other relates to an inquiry into the future. And if there is a mistake in the opinion as to extent, no good reason appears why the equitable doctrine of rescinding a contract for a mistake mutually made and unallowed for by the parties should not be enforced in the same way as when the mistake relates to the nature of the injury. The mistake may be definitely and practically proved in distinction from opinion as to consequences. While in *McIsaac* v. *McMurray, supra,* the mistake related to the nature of the injury, the reasoning of the opinion is broad enough to include cases where the mistake is in the extent of the injury. Authority on the point is not uniform, but the following cases may be cited in support of the position here taken: *Tatman* v. *Railroad,* 10 Del. Ch. 105; *Great Northern Railway* v. *Fowler,* 136 Fed. Rep. 118; *St. Louis-San Francisco Railway* v. *Cauthen,* 112 Okl. 256; *Smith* v. *Kansas City,* 102 Kan. 518; *Rider* v. *Railway,* 112 Kan. 765; *Sexton* v. *Querbes,* 3 La. App. 203.

In the case here the plaintiff's leg was bruised. Her doctor thought the injury was neither serious nor severe and led both parties so to believe. In reliance upon the opinion the further opinion was formed and given that there would be full recovery within a few weeks. Settlement was made on the basis of such a period of disability. As a matter of fact, the bruise, instead of being superficial as the doctor thought, was one in which "the muscles were so injured that they came away from the bone," with the result of "leaving a serious sore, which of necessity will require a long time to heal and which may result in some permanent disability." And it was found that "It was not an error of judgment as to the time required to heal the injury which he [the doctor] thought existed, but rather a mistake as to the kind of an injury that had been inflicted." While the parties were mistaken as to the time that would be taken in recovery, that mistake was due wholly to the underlying mistake of the extent to which the muscles were ruptured. It was a bruise thought to be much less severe and serious than it in fact was. To paraphrase the language of the opinion in *Cogswell* v. *Railroad, supra,* 385, what the plaintiff sold was a superficial, and not a deep-seated, bruise. It was on the understanding that the bruise was only superficial that the parties contracted. It is not a case where the parties took their chances of what

might happen regardless of what the existing situation might be. The deep-seated nature of the bruise was an existing fact, whereas the parties acted in dependence upon a bruise of minor consequence. If the difference may not be called one of kind, there was a difference of extent of injury between what was understood and what in fact existed. The fact that the bruise was severe rather than mild did not depend upon future contingencies, but what had already occurred made it severe. The controlling mistake was of opinion as to what had happened, and the opinion as to future developments was a mistaken one only because of the mistake as to the existing facts. Instead of mistaken conclusions being drawn from correct premises, proper conclusions were drawn from incorrect premises. The mistake contained in the conclusions was only the adopted mistake in the premises. The situation thus appears to be no different than one of mistake as to the kind or nature of the injury. It was by reason of a controling mistake as to the existing facts that the parties are found to have acted, and as the evidence supports the findings, the exception is overruled.

*Exceptions overruled.*

All concurred.