No. 36,413

Fred R. Rubins, *Appellee*, v. Lozier-Broderick & Gordon, and Employers Mutual Liability Insurance Company, *Appellants*.

(163 P. 2d 364)

Opinion filed November 10, 1945.

*James K. Cubbison,* of Kansas City, argued the cause, and *Blake A. Williamson, Lee Vaughan,* both of Kansas City, and *Howard E. Payne,* of Olathe, were on the briefs for the appellants.

*A. J. Herrod,* of Kansas City, argued the cause, and *R. C. Southall,* of Kansas City, Mo., was on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: The claimant prevailed in a workmen's compensation case. The respondent and its insurance carrier appeal.

The alleged errors are: (1) The district court erred in finding a written claim for compensation was made in compliance with G. S. 1943 Supp. 44-520a; and (2) there was no substantial evidence to support (a) the finding upon which the final receipt and release of liability was set aside, or (b) the finding of extent of disability.

Facts essential to review will be narrated in connection with the treatment of the respective assignments of error and in the order above stated.

The claimant, Fred R. Rubins, was an employee of respondent, Lozier-Broderick and Gordon. Respondent was a contractor helping in the construction of the Sunflower Ordnance Works at De Soto. On June 21, 1943, claimant fell from a motor grader, a distance of seven or eight feet, and sustained injuries to his back, left foot and suffered a left inguinal hernia. At the end of the shift, that same morning, claimant reported the accident to his boss, respondent's labor foreman, James Swearengin. The latter sent him to the plant hospital for first aid. Respondent's superintendent was also advised of the accident. From the plant hospital respondent sent claimant to a hospital at Lawrence where a hernia operation was performed by Dr. M. T. Sudler. Respondent's foreman, Swearengin, visited claimant in the hospital at Lawrence. Claimant remained in the hospital two weeks. While in the hospital and on June 30 he wrote the following letter to respondent's foreman:

"Lawrence, Kan.
"June 30, 1943

"Mr. Jim Swearington.

"As you know I got hurt on the job a week ago and I am in the hospital at Lawrence. I want my compensation. Please see about this for me and see I get my check. Yours respectfully. Times Shack No. 9.
"FRED RUBINS 8-2252."

The above letter, according to testimony adduced on behalf of claimant, was delivered to Swearengin at Times Shack No. 9 by Carl Musselman, a friend of the claimant, about the first of July, 1943. Claimant asked Musselman to deliver the claim and to do what he could to collect the compensation. Claimant received compensation after the delivery of the above claim and respondent paid the hospital and doctor's bill.

Appellants frankly concede the employer had notice of the accident under the requirements of G. S. 1935, 44-520. They, however, contend compliance with G. S. 1943 Supp. 44-520a, pertaining to service of a written claim for compensation, constitutes an essential prerequisite to recovery and that if a written claim was executed by claimant it was not served pursuant to the requirements of that statute. The pertinent part thereof reads:

"No proceedings for compensation shall be maintainable hereunder unless a written claim for compensation shall be served upon the employer by delivering such written claim to him or to his duly authorized agent, or by delivering such written claim to him by registered mail within one hundred twenty days after the accident. . . ."

The specific complaints are service of the written claim was invalid because (1) it was not served *personally* by claimant and (2) it was not delivered to the employer or to *his duly authorized agent*. Touching the first complaint it will be observed the statute provides for making service of the claim in two ways. One is by direct delivery and the other is delivery by registered mail. It could not be argued with much, if any, persuasiveness that the law requires the injured workman to personally deposit the registered claim at the post office or in a mail box. It is difficult to understand how it can be contended with greater merit that the statute makes it mandatory for the workman to personally deliver the claim to one of the persons designated. All the statute expressly requires is service of the claim in one of the two methods prescribed. It does not expressly require the manual act of delivery to be performed by the injured workman. Moreover what practical difference could it make to the employer who delivered the claim so long as it was delivered and the employer knew, or should have known, the workman was claiming compensation? A similar contention received our consideration in *Bull v. Patti Const. Co.*, 152 Kan. 618, 106 P. 2d 690. In ·that case the workman directed his wife to try to get compensation for him if he was entitled thereto. She in turn employed an attorney who not only filed the claim but signed it on behalf of the workman. It was contended the workman was obliged to sign the claim personally. We held the statute did not make his personal signature mandatory and that an attorney, if duly authorized to do what was necessary to get the compensation, could sign the claim for the workman. We concluded the claim when served met the intent and purpose of the law in that it apprized the employer of

the claim and gave him the opportunity to fully investigate the merits thereof. We think that is true here where the claim was actually signed by the workman and was delivered by another duly authorized to do so.

Did service of the claim on respondent's labor foreman constitute service on the employer's duly authorized agent? Appellants contend it did not for the reason there was no evidence James Swearengin had been duly authorized by respondent *to receive claims for compensation.* The statute does not say the claim must be delivered to the employer or to his agent duly authorized *to receive claims for compensation.* It says the service shall be by delivery to the employer or to *his duly authorized agent.*

In the instant case we need not decide that delivery of the claim to any agent of the employer constitutes compliance with the statute. The question presented here is much narrower than that. In this case Swearengin was not only claimant's boss but he was respondent's labor foreman. He was the agent of the respondent who naturally and most logically would occur to any workman as the proper agent upon whom to serve the claim. It was this agent of respondent who possessed all the apparent authority to provide medical care and treatment to an injured workman. Such care and treatment constitute compensation under the act. Swearengin exercised such authority for and on behalf of the respondent and respondent paid for the medical care and attention Swearengin provided. It was this agent who visited claimant at the hospital after the operation. It was he to whom claimant reported for duty after his release from the hospital. In other words, all of claimant's contacts with respondent were through his boss, respondent's labor foreman. It well may be doubted that respondent had any agent who was formally designated as its duly authorized agent *to receive claims for compensation.* If respondent had such a duly appointed agent the record does not disclose it. It seems to us in view of the record in this particular case and under the legislative mandate prohibiting the application of technical rules of procedure in compensation cases, G. S. 1935, 44-523, we would not be justified in saying Swearengin was not a duly authorized agent of respondent upon whom service of the claim could be made.

Counsel for appellants earnestly direct our attention to testimony which they believe clearly discloses no written claim was ever delivered to Swearengin. We have not overlooked that testi-

mony and must admit some of it is quite convincing. Nevertheless the jurisdiction of this court is limited to questions of law. (G. S. 1935, 44-556.) This court is, therefore, precluded from disturbing any finding of the district court which, as here, is supported by substantial evidence. (*Johnson v. Voss*, 152 Kan. 586, 106 P. 2d 648.)

The district court set aside a receipt and release from liability after finding claimant was misled into the execution thereof and that it was executed by mutual mistake. It was set aside in response to a petition filed June 29, 1944, based on mutual mistake and inadequate compensation. The receipt was taken pursuant to the provisions of G. S. 1935, 44-527. No award for compensation was made. The release was executed August 21, 1943, approximately one month after claimant returned to his employment with respondent. It was executed in consideration of payment of compensation for two weeks and six days temporary total disability in the sum of $51.42 and the payment of hospital and medical expenses by respondent.

. Was there substantial evidence to support the trial court's finding the release should be set aside? Doctor Sudler made three or four examinations of claimant after claimant left the hospital and before he returned to his work on July 19, 1943. On that date claimant continued to suffer pain in his back and left foot, but the doctor advised him the soreness of which he complained would disappear in time, with exercise. Claimant was unable to perform the heavy work he had previously done and was assigned to light work. He, however, suffered some pain in his groin, back and. foot. That was his condition when he signed the release. He did not read the release. He said he thought he was signing a receipt for compensation paid. He did not know the person who obtained the release or whom he represented. In the course of their conversation claimant stated he was not entirely well. He also advised such person as follows: Doctor Sudler told him the pain would disappear later and that he would be all right; Doctor Sudler had a good name; he thought Doctor Sudler was a good doctor and knew what he was talking about; he was depending on what Doctor Sudler told him.

Appellee was retained by respondent on light work until September, 1943. When respondent no longer had such work for him he obtained light work, janitor work and doing errands, at the bomber

plant in Kansas City. He was obliged to take time off from the last employment and did so for a month on two separate occasions. The layoffs were occasioned by pain in the ruptured region and the swelling of his foot. The layoffs were recommended by the employer's doctor. Claimant had the services of a nurse on the occasion of those layoffs. When his physical condition failed to improve he consulted Dr. D. M. Nigro who examined him on June 28, 1944, and reported as follows:

"The above patient came into my office on June 28th, stating that he was injured while working for the Lozier, Broderick & Gordon Company at the Sunflower Ordnance Plant, while working on a Steamer Cleaning Machine. He complained of pain and soreness about the left inguinal region, left foot and back. He stated that he was operated on for a left inguinal hernia and examination shows a scar; he now has a post-operative hernia which will have to be repaired. Examination of the left foot shows swelling and tenderness of the soft parts, and was quite swollen when he was in my office. He complains of pain and soreness in this foot, especially when he is up and around for any length of time. Examination of the back shows a lumbosacral sprain with muscle spasm and tenderness with limited motion. Patient states that pain radiates from the back down the left leg to the foot. There may be a possible rupture of the intervertebral disc. Patient is temporarily totally disabled and will be for some time. He needs an operation to repair the hernia on the left side, and needs some traction and hospitalization for his back. He was advised to wear a truss and back support and to build up his left foot by putting a small sponge in the shoe. He was given some sedatives for pain and rest and a tonic. Will keep you advised regarding his progress."

Appellants argue there was no evidence of misrepresentation or fraud in obtaining the release and that mutual mistake was not established. Appellee did not seek cancellation of the release on the ground of fraud but on the grounds of mutual mistake and inadequate compensation. Appellee related the conversation he had with respondent's doctor at the time of his last examination. That occasion was approximately a month before he signed the release. His testimony disclosed he had every confidence in Doctor Sudler's integrity, professional ability and judgment. He said, "I was depending on what the doctor told me." Appellants did not produce Doctor Sudler to refute appellee's testimony. The district court undoubtedly believed respondent's doctor had not deliberately misled claimant with respect to his recovery. In other words, the district court concluded the doctor was in error and that appellee believed and acted upon the honest but mistaken advice and judgment of respondent's doctor. That they were mistaken is disclosed not only

by appellee's testimony concerning his failure to recover but also by that of Doctor Nigro. Appellants subpoenaed no doctor to refute the testimony of Doctor Nigro with respect to claimant's condition and did not request the appointment of a neutral physician to examine claimant. Under our law claimant would have been entitled to recover sixty percent of his average weekly wage during twelve weeks for the traumatic hernia alone. (G. S. 1935, 44-510 [20].) Obviously the compensation paid in the sum of $51.42 was grossly inadequate and the release was properly set aside. (*Weathers v. Bridge Co.*, 99 Kan. 632, 162 Pac. 957; *Walker v. Kansas Gasoline Co.*, 130 Kan. 576, 287 Pac. 235.)

Appellants finally urge the court erred in allowing an award of twenty percent general disability. The only testimony on that point was that of Doctor Nigro who estimated the temporary total disability would continue for a period of six or eight weeks and would be followed by a "permanent partial disability of in the vicinity of 20 percent."

The specific complaint is that the testimony of Doctor Nigro did not affirmatively disclose he had taken into account disability resulting from a previous injury to the same foot of appellee suffered in September, 1942, for which compensation had been paid by a previous employer.

It is true there is nothing in Doctor Nigro's testimony concerning the effect of the former injury. Appellants might have, but did not, interrogate Doctor Nigro with respect to the question of continuing disability from the former injury. Appellants argue the burden was on appellee to establish the extent of disability appellee suffered from the injury now in question. They are correct in that contention. From the record before us it would appear the two injuries probably were not to the same part of the foot. That fact, however, may not be material. In any event appellee had been doing his regular heavy work satisfactorily for respondent prior to the injury now in question. Appellee also testified he had practically recovered from the former injury to his foot when he suffered the last injury. It follows there was testimony which clearly tended to support the trial court's finding of disability resulting from the injury now in question. Under the circumstances we are not inclined to disturb the finding.

The judgment is affirmed.