No. 23,600.

JAKE M. PARROTT, *Appellant*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellee.*

#### SYLLABUS BY THE COURT.

1. COMMON CARRIER—*Injury to Passenger—Settlement and Release—Mutual Mistake as to Nature of Injuries—Question of Fact.* The testimony relating to a release of a claim for damages by an injured railway passenger examined and *held,* that it sufficiently tends to show mutual mistake of the parties as to the nature of the injuries of the passenger and also that the release was procured by misrepresentations, to take the case to the jury.

2. SAME—*No Ratification of Settlement.* A certain letter written by plaintiff to the claim agent of the defendant is held not to be a ratification of the settlement.

Appeal from Atchison district court; WILLIAM A. JACKSON, judge. Opinion filed June 10, 1922. Reversed.

*Maurice O'Keefe, Hugo Orloff,* both of Atchison, *Bennett R. Wheeler, S. M. Brewster,* and *John L. Hunt,* all of Topeka, for the appellant.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* all of Topeka, and *Z. E. Jackson,* of Atchison, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by Jake M. Parrott against the Atchison, Topeka & Santa Fe Railway Company to recover damages for injuries alleged to have been sustained by him while he, a passenger, was alighting from a train of the defendant. A demurrer to his evidence was sustained, from which ruling he appeals.

His testimony tended to show that he was a passenger on a train going from Cummings to Atchison, and that when the train stopped at Tenth street, Atchison, a regular stopping place, he proceeded to alight and before he had time to safely do so, the train was negligently started without notice or warning, throwing him to the

ground, by reason of which his collar bone was broken and his arm injured so that he is permanently crippled.

The defense set up was that the injuries were not the result of the negligence of the defendant but resulted from plaintiff's own negligence, and further, that for a consideration the plaintiff had released the defendant from all liability for the damages sustained. There is no controversy here as to the extent of the injuries suffered by the plaintiff nor as to the negligence by which they were occasioned.

The contention is that the evidence disclosed that plaintiff had executed a release to the plaintiff upon the payment of $20 and had discharged it from all liability; and further, that if the release lacked validity in any respect, it had been cured and ratified by a letter subsequently written by the plaintiff to the claim agent of the defendant. As to the release the plaintiff testified that within a few days after the accident he called on Doctor Dingess, who had previously acted as his physician and who was also the employed physician of the defendant. The doctor made a cursory examination, prescribed linament to be rubbed on the affected part, and procuring a paper, he began writing plaintiff's answers to inquiries as to his name, age, etc., and in the next call the doctor asked him if a claim agent of the defendant had called on him, and when he replied in the negative, the doctor said that one would call on him within a few days. Shortly afterward, the doctor asked him to go to the hospital for an X-ray examination of his shoulder, and after inspecting the pictures there taken he told the plaintiff that his injury was a small bruise, that some of the ligaments had been loosened, but that he would be well in a few days, and could not come in for a large claim of damages. The claim agent approached the plaintiff for a settlement and asked him to go to Doctor Dingess' office for that purpose. The agent offered him $5 on his claim, then $10, and then said that the best offer that he could make him for such an injury was $20, and the payment of the hospital bill. Having in mind the doctor's statement as to the nature of his injury he accepted the offer and signed the release. About a week afterwards he called on the doctor again and reported that his arm was no better, when the doctor told him that it would be sore for some time, and when plaintiff asked him why he had not told him so before the settlement, the doctor replied that he guessed he was in too big a hurry. Later when plaintiff asked the doctor for a statement of the

Parrott v. Railway Co.

facts he refused to give one, saying that it would look bad for him. Shortly afterward, an examination of the shoulder was made, and it disclosed that the injury had fractured the collar bone, that there was a marked deformity of the shoulder joint, that it caused a spine to extend forward and upward anteriorly and that it will never mend.

It is manifest that the release was executed by the plaintiff in the belief that the injury was slight and that its effect would pass within a few days. He was induced to think so by the statement of the doctor that the soreness would soon pass away. Plaintiff testified that he had "implicit faith in Doctor Dingess, and believed what he said, and believed he would be well in a few days." If the statements of the doctor were honestly made he was likewise mistaken as to the nature of the injury and it may be inferred that the claim agent who coöperated with the doctor did not understand that it was as serious as it turned out to be. The nominal amounts proposed in settlement of the claim and the amount finally agreed upon tends to show that the claim agent and the doctor both regarded the injury as slight and temporary. The trifling consideration given in payment of a serious and permanent injury argues strongly that there was either a mistake of facts on their part or that the release was fraudulently procured. Assuming that all were acting in good faith, it is manifest from the evidence that they were mistaken as to the character of the injury and that under the circumstances the release was not binding.

There is some evidence tending to show a lack of good faith and that the claim agent and the doctor purposely kept from the plaintiff the serious nature of his injury until the settlement was effected, when some of the facts tending to establish that claim are that plaintiff called on the doctor, data as to his claim was taken by the doctor and he informed the plaintiff that a claim agent would visit him within a day or two. The claim agent took the plaintiff to the doctor's office to make the settlement. After the X-ray picture was made revealing the nature of the injury, the doctor still declared that it was only a small bruise with some ligaments torn loose and that he could not come in for a big claim. Before the settlement and when it was proposed to go to the hospital to inspect the X-ray picture, the claim agent told the plaintiff that the picture was not there, but had been sent to Topeka. After the release was signed and plaintiff was complaining about his suffering the doctor told

him it would be sore for some time, and when asked why he did not tell him that before the release was given, the doctor said he was in too big a hurry and then refused to make a statement as to plaintiff's condition, saying that it would look bad for him. We conclude that there was evidence to go to the jury not only as to a mutual mistake of·fact, but also as tending to show misrepresentations of the doctor as to the nature of the injury and of his coöperation with the claim agent in effecting a settlement.

There is a further contention that if the evidence should be regarded as sufficient to show that the release was procured through mistake or fraud, it had been ratified and cured by the following letter written to the claim agent by the plaintiff:

"Mr. h. C. pribble. Well i thought i would write to you and let you know how i am. My arm hant any better and i haid to other doctors to look at it and the plates at the hospital and they say that the bones is broke and it will leave me a cripple the rest of my life and i think i ought to be in the hospital now but i hant got the money so i thought i would see if you would take this up with the santa fe Company and see what they will do for Me for i wot bee able for work this way i know we settled up wonce and i acked the man and will do so again for things looks bad to me aith an arm like mine is cant work and no money neither and the santa fe train is the blame for it all and i think the santa fe furm ought to look after this at wonce for i have done all the suffering and hant done yet and not my falt nether. well i would like to hear from you at wonce for you know how things is now address all to

Mr. J. M. Parrett, 1011 George street,

atchison, Kansas."

The contention is that in this letter plaintiff in effect has stated that he entered into a fair settlement and had no complaint to make about it, but that as he needed hospital treatment he desired the agent to take that matter up with the defendant. This inference of recognition and satisfaction with the settlement is derived from his statement: "i know we settled up wonce and I acked the man and will do so again for things looks bad to me," etc. Instead of a ratification the letter carried an implication that plaintiff had acted the man in settling upon the understanding of the facts at the time the settlement was made, but that now it has developed that the parties were mistaken as to the nature and extent of the plaintiff's injuries and that he is now willing to act the man and make a settlement on the basis of the actual injuries which had now become apparent. To show that a mistake had been made he, in effect, says that two doctors who had examined him and the X-ray plates that had been taken had advised him that the bones of his shoulder were

broken, that he would be a cripple for life, and that he should be in the hospital at this time, but was without money to pay for treatment. He therefore asked the claim agent to take the matter up again with the defendant as it was to blame for his condition. Taking the letter in its entirety it is more of a repudiation of the settlement than a ratification of it, and it is clear that the circumstances of the case do not bring it within the rule of the cited case of *Frazier v. Railway Co.*, 97 Kan. 285, 154 Pac. 1022. The case is more nearly in line with *Ladd v. Railway Co.*, 97 Kan. 543, 155 Pac. 943, and as the evidence is deemed sufficient to take the case to the jury, the decision sustaining the demurrer to plaintiff's evidence must be reversed and the cause remanded for a new trial.