No. 24,638.

EGAN KOSHKA, *Appellee*, v. THE MISSOURI PACIFIC RAILROAD COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. COMPENSATION ACT—*Only Matters Presented to Trial Court for Decision are Reviewable on Appeal.* On appeal it is useless to urge propositions of law which were neither presented to nor considered by the trial court. This rule applied here to questions of law relating to interstate commerce and the workmen's compensation act not raised below.

2. SAME—*Negligence—Evidence—Questions for Jury.* The evidence to support a cause of action for negligence which injured a workman in a railway freight house examined and held sufficient to make it a jury question.

3. SAME—*Release Made Under Mutual Mistake May Be Set Aside.* Rule followed that a purported settlement and release of a meritorious claim for damages for an inadequate sum of money, induced by the mutual mistake of a workman and his employer's agents in underestimating the gravity of the workman's injury, will not bar an action for adequate damages when they are later but timely ascertained.

4. SAME—*Release Induced Under Mutual Mistake—Return of Money Not Prerequisite to Action to Set Aside.* Rule followed that where an employer has effected a settlement and release of a claim for his servant's injuries caused by the employer's negligence, which settlement and release was induced by mutual mistake and was for a grossly inadequate sum, a return of the money paid is not a prerequisite to an avoidance of such settlement and release, since the sum paid can be treated as an item of credit if and when the servant's real damages are judicially ascertained and allowed.

5. SAME—*Findings of Fact—Evidence.* The jury's findings of fact being supported by substantial evidence and being relevant to the issue, a motion to set them aside was properly denied.

Appeal from Wyandotte district court, division No. 2; WILLIAM H. MC-CAMISH, judge. Opinion filed July 7, 1923. Affirmed.

*W. P. Waggener, O. P. May,* both of Atchison, and *T. M. Van Cleave,* of Kansas City, for the appellant.

*J. H. Brady,* and *T. F. Railsback,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages for injuries sustained in defendant's service. Plaintiff was a workman at defendant's freight house in Kansas City, Mo. He and other workmen were building some sort of a bridge platform between two loading docks. This bridge platform was in movable sections supported

Koshka v. Railroad Co.

by wooden stilts. While the platform sections were being placed in position it was necessary that some of the workmen should steady them and the stilts. One of the sections did not seem to fit, and defendant's foreman directed the plaintiff to climb on the platform and loosen it with a crowbar so that it could be better adjusted to its proper position. Plaintiff obeyed, and when he gave the section a wrench with the crowbar, the bridging fell, carrying plaintiff with it. His elbow struck a rail in the railway track below, which caused the injury which gave rise to this lawsuit.

Plaintiff's petition narrated the facts with the usual recitals of negligence—defendant's failure to furnish safe equipment, the foreman's orders for plaintiff to go on the insufficiently supported bridging, and the like. He also alleged that he was an unskilled laborer with no precedent knowledge of such work.

Defendant's answer pleaded a general denial, assumption of risk, plaintiff's sole negligence as the cause of his injury, also a full and final settlement and written release for $22 for all plaintiff's real or imaginary damages, which sum had been paid.

Plaintiff's reply alleged that he could not read or understand English and that he signed the release in reliance on defendant's representation that it was a receipt for wages due, and that any settlement he made with defendant was pursuant to the advice of defendant's doctor that his injuries were slight, which both he and the doctor believed, and that the $22 was grossly inadequate and insufficient as a consideration to support the pretended settlement and release.

The jury returned a verdict for plaintiff for $4,050 less the $22 paid by defendant, and answered special questions:

"Q. 1. Did the plaintiff, on or about the 24th day of August, 1921, accept from the defendant, $22, and execute a release of his claim? A. Yes, by mutual mistake.

"Q. 5. If you find for the plaintiff herein, then state fully the act or acts of negligence of which defendant was guilty? A. The foreman by directing plaintiff to pry loose a section of bridge without proper support to prevent bridge from falling.

"Q. 6. State whether or not plaintiff had ever helped construct one of these bridges before? A. Yes. . . .

"Q. 8. What was there about this bridge that defendant knew, which plaintiff did not also know A. Foreman knew how to construct bridge while plaintiff did not.

"Q. 9. What caused the bridge to fall? A. Improper support."

Judgment was entered accordingly.

Defendant appeals, contending first that the case was tried on the erroneous theory that the work at which plaintiff was engaged in the service of defendant was interstate commerce and governed by the federal employers' 'liability act. Not so, however. No such idea was broached in the trial court. It was tried under the Kansas statute (Gen. Stat. 1915, § 8480 *et seq.*), which is a virtual copy of the federal act, which makes it ordinarily a question of no consequence, in damage cases like the one here, whether the parties were engaged in interstate or local commerce (*Kasper v. Railway Co.*, 111 Kan. 267, syl. ¶ 2, 207 Pac. 203), since the same rules of law control.

It is next urged that the court had no jurisdiction, since it should have been presumed that in the state of Missouri, where the cause of action arose, there is a workmen's compensation act like our own, and there should have been a further presumption that neither plaintiff nor defendant had elected not to be governed by its terms. But this is merely another point never intimated in the course of the trial below, and so it is entitled to no consideration here. (*Frere v. Railway Co.*, 94 Kan. 57, 145 Pac. 864.)

The next contention is that there was no evidence of negligence on the part of defendant. There was ample evidence to show how the accident occurred. It was shown that the bridging was insufficiently supported, that the workmen, detailed to steady it and the wooden stilts, were so careless that when plaintiff, in obedience to the foreman's orders, gave one of the sections a wrench, and the structure on which he was standing started to sway, they abandoned their posts of duty, "they turned loose the horses (stilts or trestles) and bridge and ran away." There was no excuse for their doing so. They were in no apparent danger; the bridging was only four feet high. It was defendant's duty to employ careful and dependable fellow workmen to give adequate support and steadiness to the bridging, or to furnish other appropriate and adequate means to support it. The defendant's negligence was sufficiently established to make it a jury question.

It is next argued that there was no evidence of mutual mistake as to the extent of plaintiff's injury at the time he executed the release for $22. Plaintiff testified that he did not even understand he was executing a release at all; he thought he was giving a receipt for wages. It was also shown that he did not know he was seriously injured. Indeed, a few days after he was injured he returned to his job and tried to use his arm, and not for some time

did he know the extent of his injury. He depended on what the defendant's doctor told him, "that he was all right, he can go back to work," and so, apparently, did the defendant's claim agent who settled with plaintiff, if indeed there was any such settlement as pleaded by defendant. Defendant's claim agent testified:

"Q. So far as Koshka was concerned he thought he was all right? A. Yes.

"Q. The chief surgeon thought he would be all right in a few days? . . . A. He said a few days on his report. . . .

"Q. You believed your doctor, did you not? A. I assumed it was nothing serious. . . .

"Q. With these humanitarian ideas in your mind at that time you really thought the man was not seriously hurt? A. I assumed he would be ready to go back to work when he said he would.

"Q. And when your doctor said he would? A. Yes, sir."

This evidence makes it clear that plaintiff, defendant's doctor, and defendant's claim agent, all three, assumed and believed that plaintiff's injuries were not serious. It transpired in time, however, that the injury was both serious and permanent, that it was a case of chronic inflammation of the synovial membrane of the elbow joint. There was no testimony to contradict or discredit that of the only physician who was a witness at the trial. He testified:

"When he first came to me he had a condition in his left elbow that we call synovitis. His elbow was swollen; it was painful and the motion in it was limited. Synovitis is inflammation of the synovial membrane of the joint. Usually, it means that some fluid is thrown out into the joint that restricts the motion in the joint; gives the patient pain; have all the symptoms of an inflammation. I treated him at that time and subsequently. I saw him off and on until about the second of November, last year. I have examined him to-day. . . . His limitation of motion to-day is more than it was when I first saw him. He had about five degrees of limitation in extension and flexion, when I first saw him. . . . He has about 20 degrees of limitation now. . . . Since the man came to me, in my opinion, his arm has not been in condition to do hard work with it. It is to-day. If this arm were properly taken care of and put out of commission for three to six months and then an attempt again made to use it again, if the attempt to use it did not bring back the inflammation, I would say the patient had a tentative cure. On the other hand, if that elbow began to swell and show symptoms of inflammation like it has to-day, I would consider that were a permanent condition."

In view of these facts, it is quite clear that if sincerity of conduct and purpose be attributed to the defendant's doctor and the claim agent, as well as to plaintiff, there was a mutual mistake in the

settlement and release for a grossly inadequate consideration. (*Weathers v. Bridge Co.*, 99 Kan. 632, 162 Pac. 957; *Smith v. Kansas City*, 102 Kan. 518, 520, 171 Pac. 9; *Wolf v. Packing Co.*, 105 Kan. 317, 182 Pac. 395; *Miller v. Gas & Fuel Co.*, 108 Kan. 124, 193 Pac. 896; *Parrot v. Railway Co.*, 111 Kan. 375, 207 Pac. 777.)

Defendant's next point is that plaintiff could not avoid the release without returning the $22. But it has long been the rule in this jurisdiction that where a settlement and release of a claim for personal injuries has been made for a grossly inadequate sum, whether induced by fraud, mutual mistake, lack of capacity or understanding, coercion or the like, a return of the consideration is not a prerequisite to an avoidance of the release as in ordinary cases of rescission, but can be taken care of as an item of credit if and when plaintiff's real damages are judicially determined and allowed. (*Railroad Company v. Doyle*, 18 Kan. 58, 64; *Railroad Co. v. Goodholm*, 61 Kan. 758, 60 Pac. 1066; *Carver v. Fraternal Citizens*, 103 Kan. 824, 176 Pac. 634.)

It is finally urged that defendant's motion to set aside the jury's answers to the special questions should have been sustained. In this connection it is asserted that there was no evidence that the foreman knew how to construct the bridge which collapsed. That could surely be presumed, otherwise it would be but another element of negligence in placing defendant's business in charge of an incompetent foreman; and while finding No. 6 does show that plaintiff had helped construct one such bridge before, the evidence was quite clear that the plaintiff was an ignorant and dull but obedient foreigner who had only worked for defendant a short time. He could not be expected to use that degree of care in looking out for his own safety which the law imposes on an alert and intelligent workman. (*Haines v. Railroad Co.*, 110 Kan. 269, 203 Pac. 707.) Since the evidence justified the findings and they were relevant to the issue, the motion to set aside was properly denied.

The record contains no error and the judgment is affirmed.