No. 26,650.

J. P. Brown, *Appellee*, v. The Kansas Buff Brick and Manu-
facturing Company, *Appellant*.

SYLLABUS BY THE COURT.

1. Workmen's Compensaton Act—*Injuries Arising Out of and in Course of
Employment—Evidence*. The evidence in a workmen's compensation case
considered, and held sufficient to sustain a finding that a disease from which
the plaintiff suffers was the result of an injury arising out of and in the
course of his employment.

2. Same—*Release—Mutual Mistake—Evidence*. The evidence considered and
held sufficient for submission to the jury on the question of mutual mistake
as to the nature and extent of plaintiff's injury at the time of the execution
of the release.

Appeal from Wilson district court; Shelby C. Brown, judge. Opinion filed
February 6, 1926. Affirmed.

W. E. Ziegler, A. M. Etchen and Carl E. Ziegler, all of Coffeyville, for the
appellant.

Frank E. Dresia and Charles Stephens, both of Columbus, for the appellee.

The opinion of the court was delivered by

Hopkins, J.: The action was one to recover under the workmen's
compensation law. Plaintiff, a carpenter fifty-seven years of age,
an employee of defendant, while working in defendant's plant near
Fredonia, March 2, 1923, fell about five feet from a scaffold, strik-
ing his back across the rails of a narrow track. One rail injured him
in the lumbar region, the other at or about the base of the neck.
After a few days' absence he returned to the plant, where he aided
in directing certain work with which he was familiar. He con-
tinued to suffer, and consulted several physicians. On October 22
following the injury, the defendant paid him $120 as full compensa-
tion and received his written release. In this action he recovered
judgment for compensation for permanent disability, and setting
aside the release.

The defendant appeals, contending that plaintiff's disability arose
from a disease known as progressive muscular atrophy, of the Aran-
Duchenne type, with which he was afflicted, and not from the injury

Workmen's Compensation Act, C. J. p. 127 n. 95, 97.

suffered in his fall. Also, that there was no mutual mistake in the execution of the release.

There was evidence showing that the plaintiff, before his injury, had complained of and been treated for rheumatism; that he had used a battery for it and that it had cleared up; that prior to his injury he had trouble with his hands generally; had difficulty in picking up nails. At the time of trial it was admitted that he was afflicted with progressive muscular atrophy, a disease of the nerve cells in the anterior horns of the spinal cord. It is said that the disease first affects the muscles in the thumb and hand and progressively extends up the arm, shoulder and into the chest. Later it affects the feet and legs. It is a degeneration of the anterior horns of the spinal cord. The thaner muscle of the thumb is first attacked. The thumb falls back on a plane with the fingers. It is accompanied by numbness in the hand and usually is without pain.

Some time after the accident, plaintiff was sent to defendant's physician. Others were consulted. He was advised that he had rheumatism. He was given medicine and treated for that disease. One doctor told him he had lumbago; that he should return home and do light work and that it would clear up. One of the doctors testified:

"I noticed that his hands were shrunken and shriveled, and also his arms, the hands showing a claw-like appearance, and a general atrophy of the muscular tissues of both hands and both arms and both legs. He said he had fallen across two rails and that one of them had struck him down around the small of his back and the other higher up somewhere in the shoulder region. . . . The muscles of the calves of the leg were shrunken, and I have an opinion as to whether or not the fall was or was not the cause of the development of this atrophy of the muscles. My opinion is that it is a factor."

There was evidence for the defendant that it required several years for progressive muscular atrophy to develop to the extent plaintiff was suffering from it at the time of the trial. This, however, was a controverted question, witnesses for plaintiff testifying that it often developed rapidly. There was also testimony that when plaintiff was treating his rheumatism, previous to the injury, it had affected his hands and fingers but had not affected his thumbs.

The jury found for plaintiff, and returned special findings to the effect that the plaintiff was permanently disabled from performing

manual labor; that he was entitled to compensation for total disability from March 2, 1923, to March 2, 1931, at $15 per week; that previous to his injury he had obtained an electrical battery for the purpose of treating his hands; that he had difficulty in handling tools or picking up nails; that plaintiff was (at time of trial) afflicted with a disease known as progressive muscular atrophy, of the Aran-Duchenne type; that such disease is slowly progressive; that a characteristic symptom of the disease is that the hands first become numb and weak.

Under all the circumstances, it was properly a jury question as to whether plaintiff's condition was caused by the injury, and that question was resolved in his favor.

The evidence was ample to show a mutual mistake by plaintiff and physicians for the defendant, and it is not contended but that $120 was a grossly inadequate amount for such an injury. (*Blackburn v. Brick & Tile Co.*, 107 Kan. 722, 193 Pac. 251; *Parrott v. Railway Co.*, 111 Kan. 375, 207 Pac. 277; *Rider v. Railway Co.*, 112 Kan. 765, 212 Pac. 678; *Bidnick v. Armour & Co.*, 113 Kan. 277, 214 Pac. 808; *Koshka v. Railroad Co.*, 114 Kan. 126, 217 Pac. 293.)

Likewise the evidence was sufficient to sustain the finding that the disease from which the plaintiff was suffering at the time of the trial was the result of the injury which arose out of and in the course of his employment.

The judgment is affirmed.