No. 27,647.

HUIE REAVES, *Appellee,* v. SWIFT & COMPANY, *Appellant.*

(261 Pac. 576.)

SYLLABUS BY THE COURT.

RELEASE—*Mutual Mistake as to Nature and Extent of Injury—Right to Sue for Compensation.* In an action to obtain compensation for an injury to the knee joint of an employee, which was examined and treated by the medical department of the employer, the employee was told by the doctors that his knee was all right and he could return to work, and about the same time the employee was procured to sign a release for a grossly inadequate sum. Upon his return to work it was disclosed that his injury was serious and permanent, and upon the testimony it is held that there was a mutual mistake of the parties as to the nature and extent of the injury, and that plaintiff was entitled to compensation notwithstanding the execution of the release.

Appeal from Wyandotte district court; division No. 3.; WILLIAM H. McCAMISH, judge. Opinion filed December 10, 1927. Affirmed.

*Russell Field,* of Kansas City, Mo., for the appellant.

*J. H. Brady* and *T. F. Railsback,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Huie Reaves was an employee of Swift & Company. He was accidentally injured in the course of his employment by stepping into a brine sewer, while carrying a load of lumber on his shoulder, which it is alleged resulted in wrenching and bruising his right knee and leg and that they were contaminated and infected

Release, 34 Cyc. pp. 1055 n. 82, 1058 n. 1, 1104 n. 21; 11 L. R. A. n. s. 201; 48 L. R. A. n. s. 449; L. R. A. 1916B 777; 23 R. C. L. 391.

by the brine and sewage, causing synovitis, with a limitation of the motion of the knee and leg and a permanent crippling of the same. He claimed compensation for the injury at the rate of $6 per week, and gave defendant notice of his claim with the request for arbitration of the claim. Consent was not given, and the present action was brought.

The defendant answered that it had paid to plaintiff $12.24, which Reaves had accepted in full satisfaction in discharge of the claim in respect to the injuries received, and that the release given by plaintiff had been filed in the office of the clerk of the district court as the law provides. Plaintiff's reply was that when he received the payment he was told that it was a mere receipt for the time that had elapsed since his injury, and that he signed it relying upon the truthfulness of the statement. He further replied that he was given treatment by the defendant for his injuries from the time he received them up to the day he was paid $12.24; that after several visits the pain had subsided in his knee, and he was advised by those in charge of the medical department that his leg had healed so that he might go back to work; that he believed the statements and undertook to go back to work, and then signed the receipt mentioned, but found that he, as well as the medical department, was mistaken, as it turned out that his wound had not healed, that it thereafter gave him much pain and trouble, and he was compelled to suspend labor for a long time. He added that he is an uneducated man and did not understand the compensation law nor the nature of the document put forth for him to sign, but understood that the nurse who had treated his leg and had made it feel better told him to return to work and sign the papers. He was also told he could not go to work until he gave them a receipt for the compensation, which was explained to him as the compensation for the time he had been off duty.

The plaintiff introduced his testimony, and at the close thereof the defendant filed a demurrer to the testimony claiming that it was not sufficient to establish a cause of action against defendant. The demurrer was overruled, and the defendant then offered no evidence, but rested its case.

After instructions were given, the jury found that plaintiff was entitled to compensation, and also found that he had been wholly incapacitated by reason of the injury for two weeks, and partially disabled from performing work and labor as a result of the injury up

to the time of the trial, seventy-nine weeks, and that he will be partially incapacitated during his natural life.

The evidence shows that when plaintiff stepped into the sewer with a load on his shoulder, his leg was skinned and bruised and his knee joint twisted and injured. After working a short time the foreman sent him to a company doctor, who turned him over to a nurse in the office, designated as the "lady doctor," with the direction to "tie it up." Two or three days later the doctor examined the leg, and advised plaintiff to stay at home for eight or nine days. During that period he visited the doctor's office about twice a week and was treated by the lady doctor. At the end of about two weeks the lady doctor expressed the opinion that he was able to go to work. He called her attention to the fact that his knee was still swollen, but she said she thought it would grow better when it was put in action, and that he would be able to work on the following Monday. He returned to the plant on Monday and went to the doctor's office to get a slip allowing him to resume work. When he did so, the doctor said, "Who told this man to go to work?" and the lady doctor said, "I did"; and then the doctor gave him a slip of paper to present to the foreman. He was told to go to the office and get his money, and there those in charge wrote a check for $12.24, and caused him to sign a paper which was in the form of a release, and stated that it was accepted "in full satisfaction and discharge of all claims accrued or to accrue in respect to all injuries or injurious results, direct or indirect, which have arisen or which may arise from an accident sustained by me on or about the 26th day of May, 1925, while in the employ of the said Swift & Company." Signed, "Huie Reaves." Following this was the statement, "I read this." The plaintiff stated that he did not read the paper, and they did not tell him that it was a release. While he worked for some time afterwards, the knee became swollen and continued to grow worse, until he was disabled and had to quit work for defendant. As to the injury and condition of the leg, a physician testified that he found a scar along his shin bone and extending up towards his knee, and among other things said that the knee was swollen and there was a thickening about the joint, that he was unable to bend the knee beyond one-third of the normal range, and that upon examination the hamstring tendons were found to be under tension and affected with what is called synovitis of the knee. He stated that the plain-

tiff is incapacitated fifty per cent, and that in his opinion it is a permanent partial disability. Two other physicians gave testimony of like import as to the condition of the leg and the extent of the disability. The injury and disability found by the jury are well supported by the testimony.

It is contended that there was no fraud in procuring the release on the payment of the $12.24, and that a mutual mistake was not sufficiently shown. In view of the nature of the injury the payment of $12.24 was a mere bagatelle. It argues strongly that the medical department of the defendant, as well as the plaintiff, was mistaken in their judgment as to the extent of the injuries. Their statements show that only slight attention was given to the injured joint, and assuming that they were acting in good faith, as we may assume, they were obviously mistaken when they told the plaintiff the knee, although swollen, would grow better with use and that he was fit for work. The pain had abated to some extent, and the plaintiff relied on their statements, accepted their judgment and undertook to carry on. It is clear that plaintiff was also mistaken as to the extent of the injury. One of the physicians explained that after an injury to a joint, there is first an acute condition which will pass and the injured person may think he is getting well, but pretty soon it passes into a chronic condition with a thickening of the synovial membrane and joint structures, and this is followed by limitation of motion. He said that "after a time the fever subsides and the thing becomes chronic, the temperature drops away, and you think they are well. You send them back to work and in two or three days the knee is all swollen up and painful again. A condition such as he has now can come on so gradually with the thickening up of the structures in the knee, and within a year or two's time you get a practical locking of the knee so you do not get any motion." This may explain the fact that the plaintiff as well as the medical department may have mistaken the condition and thought that he was recovering.

The conditions found here were somewhat like those considered in *Koshka v. Railroad Co.*, 114 Kan. 126, 217 Pac. 293, where the question of mutual mistake was involved. The injury there caused inflammation of the elbow joint, called synovitis, and after a time the injured employee returned to work. The doctor thought and told him that he would be all right in a few days, and then a release

was given which the employee thought was a receipt for accrued wages. The amount paid turned out to be grossly inadequate for the injury sustained. The evidence as to the extent of the injury was, as here, uncontradicted and tended to show that all parties had misunderstood the nature and extent of the injury. The court said:

"It is next argued that there was no evidence of mutual mistake as to the extent of plaintiff's injury at the time he executed the release for $22. Plaintiff testified that he did not even understand he was executing a release at all; he thought he was giving a receipt for wages. It was also shown that he did not know he was seriously injured. Indeed, a few days after he was injured he returned to his job and tried to use his arm, and not for some time did he know the extent of his injury. He depended on what the defendant's doctor told him, 'that he was all right, he can go back to work,' and so, apparently, did the defendant's claim agent who settled with plaintiff, if indeed there was any such settlement as pleaded by defendant. . . . The evidence makes it clear that plaintiff, defendant's doctor, and defendant's claim agent, all three, assumed and believed that plaintiff's injuries were not serious. It transpired in time, however, that the injury was both serious and permanent, that it was a case of chronic inflammation of the synovial membrane of the elbow joint." (pp. 128, 129.)

After setting forth the testimony as to the condition of the elbow resulting from the injury, it was added:

"In view of these facts, it is quite clear that if sincerity of conduct and purpose be attributed to the defendant's doctor and the claim agent, as well as to plaintiff, there was a mutual mistake in the settlement and release for a grossly inadequate consideration." (p. 129.)

Assuming that those of the medical department who advised the plaintiff that his knee was all right and that he could return to work the following Monday, upon which advice he depended, were acting in good faith, it is manifest from the uncontradicted testimony of the witnesses as to the extent of the injury that defendant, as well as plaintiff, was mistaken. It is inconceivable that they would have told him he was able to go to work, which involved the carrying of heavy loads of meat from the plant to the refrigerating cars, if they had known the character of the injury. The testimony of the doctors who treated and advised him was not taken, as the defendant rested its case on the testimony of the plaintiff. That testimony, we think, shows that the mistake was mutual and the release without effect.

Upon the evidence he was clearly entitled to compensation, and therefore the judgment is affirmed.