No. 31,668

R. H. SHAPLAND, *Appellee*, v. FERGUSON. FURNITURE COMPANY and THE FIDELITY & CASUALTY COMPANY OF NEW YORK, *Appellants*.

(33 P. 2d 145.)

Opinion filed June 9, 1934.

*C. A. Randolph, Stanley Garrity* and *Alfred Kuraner*, all of Kansas City, Mo., for the appellants.

*Charles D. Welch*, of Coffeyville, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This appeal is by the respondent from the findings and judgment of the district court in a compensation case, in which judgment was rendered in favor of the claimant for the loss of sight in his left eye by a hemorrhage within the eyeball, apparently sometime after a hemorrhage in the left chest over the heart occurring at the time of the accident.

It is not disputed that the claimant is totally blind in his left eye, nor is it disputed that the blindness thereof is due to a hemorrhage within the eyeball, but respondent contends that the claimant has failed, as a matter of law, to establish any connection between the loss of sight in the left eye and the alleged accident. The respondent in effect concedes claimant, under the evidence and the findings, might be entitled to recover for an injury, if there were any, to the left chest, but since the award of compensation is based solely on the injury to the left eye, it is claimed there is no connection between the two hemorrhages, either physically or in point of time, nor any evidence to justify or support a finding of such connection. This is the only question here involved. The evidence was taken before the compensation commissioner, and an award was made in favor of the claimant. From this the respondent appealed to the district court, where, after making findings of fact and conclusions of law, the award was affirmed and judgment rendered.

The first four findings of the trial court are as follows:

"1. On December 1, 1932, claimant was in the employ of the Ferguson Furniture Company, respondent, at the place of business at Coffeyville, Kan., and his average weekly wage as such employee was $21.57.

"2. Both the claimant and the respondent were subject to the workmen's compensation law of the state of Kansas.

"3. On that date, at about noon, the claimant assisted Mr. Ferguson in carrying a heavy round oak table, holding it over his head, from one end of the store to the other. In so doing, they were compelled to carry said table high above the rest of the furniture, and to twist from side to side in order to miss the other furniture in the room. While claimant was so engaged, claimant felt a severe pain over his heart, and shortly thereafter claimant's left side, face, including his left eye and part of his right eye, became black and claimant suffered a hemorrhage in his right side and into his left eyeball, which hemorrhage into the eyeball finally destroyed the sight of said eye.

"4. Claimant was a hemophiliac, or bleeder, and the exertion in lifting and carrying said table and the increased blood pressure caused by the lifting and carrying said table as he was required to carry it over his head above the

other furniture and in twisting about to avoid the other furniture, caused said hemorrhage into his left eye and the loss of his sight."

Attention is directed by respondent to the following language used by claimant in answer to the question, "Nature and extent of injury" in his claim for compensation, *viz.*, "hemorrhage in left side above the heart; ascending into left eye causing total blindness." The evidence shows that claimant at first mentioned only the pain in his left chest when telling his employer, his wife and others about it and when and how it occurred, and showed them the highly colored place on his left chest. A day, more or less, later he called attention to the colored condition of the left side of his face and his left eye. He said in his testimony—

"The night of the first day the black and blue spot worked up to my eye; it had a circle around it the first day. The second day when I got home it was swelled shut . . ."

He also testified that when he got back from the short trip he made the next day after the accident he was unable to work, his left eye was swelled shut and he was in great anguish. A physician was called in that second night, who said he found an exaggerated swelling of the left eye and discoloration. He first suggested local hot applications to the eye and later cold ones, as the hot ones seemed to increase the pain therein. He stated he did not remember finding any discoloration on the left side of the body. This physician also testified—

"Not a great deal is known about the disease. It is an extravasation of blood in the veins and out into the tissues, frequently spontaneous, without any cause for it. . . . It is a condition of subcutaneous hemorrhages which may appear spontaneously without any external cause. I could not determine any connection between the hemorrhage in the chest and the hemorrhage in the eye."

"These hemorrhages are not a condition of a rupture of a blood vessel, but just a gradual oozing of the blood through the vessel walls."

"Assuming this man was predisposed to have this bleeding occur spontaneously, I would not consider that the lifting of a table weighing seventy-five to one hundred pounds up as high as his head and twisting about to put it somewhere could aggravate, activate or hasten a bursting or bleeding."

Another physician at Tulsa, Okla., attended the claimant regularly for about two weeks in a hospital there, commencing about a week after the accident. He testified that when he first saw him "he was then bleeding or hemorrhaging over the left side of the chest, over the left side of the face and in and about the eye." He said there

was also a splotch on the right side of the body. He said he did not discover any connection between these hemorrhages, but thought they were hemorrhages of different and distinct vessels, and one had no connection with or relation to the other. He further said:

"If this man is a bleeder, twisting from one side to the other would aggravate or activate a condition of that kind and start in motion a bleeding, or hemorrhage; any trauma or bruise of any sort will start a patient with that condition to bleeding. Assuming the accident occurred as claimant stated, I think that this injury and this bleeding produced a loss of vision and the loss of the left eye. The accident as it occurred was responsible, even though he had a previous disposition to bleeding."

"If these blood vessels broke from an indirect cause, such as I mentioned, I would expect them to break or to happen right at the time of the pressure when he was doing the work or sustaining the injury. If he were to have a rupture of the ciliary vessels inside the eyeball, he would begin to have loss of vision as soon as blood got into the vitreous humor, in the posterior chamber. · That would occur right after the break in the blood vessel, but a man can be blind in one eye and not know it. . . . When blood is extravasated, he will notice it and have pain right away, but every individual has a different pain threshold, and he might or might not complain. As to whether I would expect one lift to cause a rupture of all these blood vessels, it is a question which one occurred first. I am unable to say which one occurred first in this case."

Two other physicians, blood specialists from Kansas, testified after an examination of the claimant on the day of the trial before the compensation commissioner. They in a general way agreed with the theory of the physician first mentioned herein, that there was no connection between the hemorrhage in the left chest and the hemorrhage in the left eyeball. They both were of the opinion that the oozing of blood was generally confined to· the point of trauma, and recognized that a straining or twisting and holding of one's breath might be equivalent to a trauma, and one of them said that even the batting of the eye might be sufficient muscular movement to cause a hemorrhage within the eye.

There seems to be some difference of opinion among the physicians as to whether such hemorrhages are oozing of blood through the walls of the blood vessels or the breaking of the walls. There is a further difference as to hemorrhages of such bleeders being confined to trauma or being spontaneous. But mainly because the pain and discoloring of the eye was not observed at the same time as that in the chest, most of the physicians testifying expressed the opinion that there was no connection between the two. To the average layman there is no direct connection between a strain of the muscles

and a hemorrhage in the left chest, but all the physicians here testifying agree that the hemorrhage in the left chest may very properly be the direct result of the strain, but they do not all agree that the strain caused the hemorrhage within the eyeball. They all place considerable stress upon the history of the case, and in that particular the two attending physicians had an advantage.

Appellant maintains that whether a judgment is supported by substantial and competent evidence is a question of law as distinguished from a question of fact, as was held in *Fair v. Golden Rule Refining Co.*, 134 Kan. 623, 7 P. 2d 70, and in applying that principle to the matters involved in the case at bar we necessarily conclude that, unless there is substantial and competent evidence supporting the findings of fact made by the trial court connecting the injury with the accident, those findings as a matter of law cannot stand. As stated above, this connection is not such a matter as a layman can readily or fully comprehend, and therefore the fact as to whether or not such connection existed must largely depend upon the judgment and experience of physicians. In this they differ widely; their opinions are conflicting. Three of them are quite firm in their opinions that there was no such connection, while one is equally strong in his opinion that the hemorrhage within the left eyeball was directly due to the straining and twisting of the claimant in lifting the table. This physician was the one that attended the patient for about two weeks, commencing when both chest and eye were still highly colored. It is not at all unusual for physicians to differ in their opinions or their theories. They each have given the reasons for their views and we are not able to say as to the testimony of any of them that it was incompetent, unsubstantial, speculative or conjectural. It was conflicting, and it is the province of the compensation commissioner and the district court to determine between their conflicting statements.

"The question whether the disability of the workman is due to an accident arising out of and in the course of his employment is a question of fact, and when once determined by the commissioner of workmen's compensation and the district court, it will not be disturbed by this court where there is substantial evidence to sustain it." (*Gregg v. American Walnut Lbr. Co.*, 137 Kan. 201, syl. ¶ 2, 19 P. 2d 463.)

In the case of *Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793, it was said:

"It is not material that the workman's blood vessels were weakened by disease, or that he was predisposed to hemorrhage because, for example, he had

breathed the dust of the sacking department for three years. The statute establishes no standard of health for workmen, entitling them or their dependents to compensation, and if the added factor of physical exertion in the employment were required to effect the lesion, and did so, the injury arose out of the employment." (p. 778.)

In the case of *Stringer v. Mining Co.*, 114 Kan. 716, 220 Pac. 168, it was held that—

"A workman was employed as a sludge man in the mill of a lead and zinc mine. While making some ordinary repairs about the mill, which was a part of his duty, he suffered a hemorrhage of the lungs, from which he died in a few minutes. Three years prior thereto he had the influenza, which weakened his lungs so that he coughed and spit up phlegm at night. There was medical evidence that in the weakened condition of his lungs the exertion of his work might have caused the hemorrhage. *Held,* sufficient to sustain a finding that his death was the result of an accident arising out of and in the course of his employment under the workmen's compensation act." (Syl. ¶ 1.)

The second paragraph of the syllabus in *Farmer v. Oklahoma Natural Gas Corp.*, 134 Kan. 629, 7 P. 2d 60, is as follows:

"The evidence examined and held sufficient to support a finding that whatever physical predisposition towards varicose veins may have existed in claimant before his injury, that condition was aggravated by severe lifting and strain which caused a sudden 'stinging sensation' in his leg which was speedily followed by his collapse and subsequent inability to do any labor such as he had been accustomed to do immediately prior to his injury." Syl. ¶ 2. (See, also, *Bidnick v. Armour & Co.*, 113 Kan. 277, 214 Pac. 808; *Brown v. Kansas Buff Brick Co.*, 120 Kan. 335, 243 Pac. 304; and *Shay v. Hill*, 133 Kan. 157, 299 Pac. 263.)

In *Jacque's Case*, 121 Maine 353, the deceased was afflicted with incipient tuberculosis of the lungs. He gained weight and strength during travel of several months, and after he resumed his work he met with an accident on May 9, 1918, by falling from a staging. He resumed work after a few days and worked only at intervals until June 10, when hemorrhages developed, labor ceased, tuberculosis became active and he died on April 4 of the following year. It was urged that there being no outward and visible evidence of injury to the chest, the incipient and dormant tuberculosis would not be set up by the accident, and therefore the hemorrhages could have no connection with the fall, but the court held that the evidence of some of the expert physicians to that effect was merely a matter of opinion, and the court affirmed the finding of the trial court to the contrary view based upon other competent and substantial evidence.

In the case of *Maxon v. Swift & Company*, 158 Minn. 491, it was held:

"A workman afflicted with arteriosclerosis was injured by falling and striking a concrete floor with the back of his head. He died fifteen months later, the immediate cause of death being a severe hemorrhage in the brain. There was evidence tending to show that when he fell his skull was fractured, a slight hemorrhage in the brain followed and that the fatal termination of his disease was hastened by the accidental injury to his head. The industrial commission found that death was caused by the accidental injury. Under the evidence, the finding cannot be held to have been the result of speculation and conjecture." (Syl.)

In the case of *Hiester v. Hunter*, 89 Pa. Sup. Ct. 393, it was held:

"On a claim for workmen's compensation it appeared that the plaintiff was engaged in digging a post hole in stony ground, and, while using a crowbar, struck a stone with such force as to jar his body, immediately after which he sustained a hemorrhage of the left eye, which resulted in the total blindness of that eye. There was sufficient medical evidence that a jar, occurring as alleged by the claimant, adequately accounted for the injury, and that, in the opinion of the doctors, the hemorrhage was produced by the shock.

"Such testimony by medical experts as to the cause of the claimant's condition complies with the legal requirements and is sufficient to sustain an award." (Syl.)

Appellant urges that the evidence shows, as a part of the history of this case, that the hemorrhage in the eyeball occurred some time after the hemorrhage in the chest, citing the fact that it was not observed or mentioned until later, and that the discoloration of that part of the face was of a different shade, but with that we must recall that it was not the bleeding in the socket or around the eyeball that affected the sight, but the bleeding within the ball itself, and it is more probable that the hemorrhage around the eyeball caused the discoloration or rings observed around the eye, than the bleeding within the ball. Besides, the evidence shows that the loss of sight is often not realized or known for some time after the vision is gone. The trial court might also very properly have given greater weight to the testimony of the attending physician because of his superior opportunity of knowing the history and progress of the case.

We have no difficulty in concluding as a matter of law that there was sufficient substantial and competent evidence, which was neither speculative nor conjectural, to support the findings of the trial court.

The judgment is affirmed.