**John P. RANDOLPH, Plaintiff,**

v.

**Joseph OTTENSTEIN et al., Defendants.**

**Civ. A. No. 1706–61.**

United States District Court
District of Columbia.

March 8, 1965.

Warren E. Miller, Washington, D. C., for the plaintiff.

Richard W. Galiher, Washington, D. C., for the defendants.

HOLTZOFF, District Judge.

The principal question of law presented in this case is whether a person who claims to have sustained injuries caused by the negligence of another, and who has obtained a settlement of his claim and has given a general release, may thereafter repudiate the settlement, obtain a cancellation of the release and bring suit on the original claim on the basis that he was unaware of one of the injuries resulting from the accident, and if so, under what circumstances may this be done. This question is of novel impression in the District of Columbia, and for this reason an extensive examination of the authorities from other jurisdictions has been made. What is before the Court at this time is a separate trial of the affirmative defense of settlement and release in an action to recover damages for personal injuries.

The plaintiff is a lawyer of many years' experience at the bar, whose practice has been of a substantial character. He was injured in an automobile accident as a result of the defendant's negligence. He submitted a claim for property dam-

age to his vehicle and for personal injuries, which he thought were of comparatively minor nature. At his demand his claim was settled by an insurance company that had insured the defendant against public liability. The settlement was substantially for the amount demanded by the plaintiff. He gave a general release. He later concluded that he had sustained further injuries which he had not previously discovered, and brought suit for damages, ignoring the settlement. The defendant pleaded settlement and release as an affirmative defense. The plaintiff claims that the release should be set aside on the ground of mutual mistake. The Court ordered a separate trial of the affirmative defense, and it is now before the Court. The issues raised in connection with the affirmative defense are equitable in character and, therefore, are triable by the Court without a jury. In any event, both parties waived a trial by jury.

The evidence introduced at this trial may be briefly summarized as follows. On April 19, 1960, the plaintiff was driving an automobile on a highway in Montgomery County, Maryland. He stopped because of a red traffic light. The individual defendant was driving an automobile in the same direction behind the plaintiff's vehicle. Because of the defendant's momentary inattention the front of the defendant's vehicle hit the rear of the plaintiff's automobile.

Two days later the plaintiff sent to the defendant an estimate that he had obtained of the cost of repairing his automobile, which amounted to $204.63. Enclosed with the plaintiff's letter was a detailed estimate prepared by a recognized automobile concern in the metropolitan area. In the meantime the plaintiff consulted his family physician, Dr. Lewis H. Biben. Representatives of the insurance company that carried liability insurance in behalf of the defendant, communicated with the plaintiff, apparently asking for more information. On May 23, the plaintiff wrote to the representatives of the insurance company showing that his out-of-pocket expenses for repairs to the automobile and physician's fees, and other matters, amounted to $249.48. He stated that he was ready to discuss settlement and hoped that his claim could be adjusted promptly. Enclosed with this communication was a certificate from Dr. Biben describing in detail his diagnosis of the plaintiff's injuries. They were related to the plaintiff's neck, or as they were described by the physician, they constituted a cervical sprain. The doctor's statement indicated that the plaintiff had almost fully recovered.

The plaintiff then waited until June 8th, and sent what might be called a follow-up letter to the representatives of the insurance company. He stated in part: "It has been over two weeks since I gave you this information and to date I have heard nothing from you." Again he said: "Do you intend to try to effect a settlement of my claim? If not, I shall proceed to file suit. If I do not hear from you by June 15th, suit will be filed promptly thereafter." Upon receipt of this letter, an employee of the representatives of the insurance company communicated with the plaintiff, who demanded a settlement of $400.00. A settlement of $399.48 was agreed upon. On June 10th, 1960, the plaintiff executed a general release, and on June 17th received a check from the insurance company for $399.48. Up to this point there is no dispute in the evidence.

Plaintiff claims that on July 11th he developed severe pain in his back, that his doctor, upon examination, suspected the possibility of a ruptured disc and that a specialist, Dr. Arthur Morris, was called in. Shortly thereafter Dr. Morris performed an operation for the removal of the ruptured disc. The plaintiff claims that the ruptured disc was caused by the accident to which reference has been made. He seeks to sustain his contention by the testimony of Dr. Biben, who was called as a witness at this trial and who stated: "I felt that his ruptured disc was due to the injury that he had sustained several months before in the automobile accident." This opinion was weakened somewhat on cross-examination. The or-

thopedic surgeon, Dr. Morris, who performed the operation for the ruptured disc, did not support this view. In a report that he submitted to plaintiff's counsel in 1962, he stated: "It is my impression that the cervical disc rupture was aggravated by his April 19, 1960 accident, and that his general osteoarthritic changes in the cervical spine predisposed him to this occurrence." Dr. Morris testified at this trial, and in answer to a question stated that it was hard to establish any causal connection between the disc condition and the accident. Sometime later the plaintiff had an attack of hives and was hospitalized on that ground for a number of weeks. A neurologist, Dr. Shapiro, testified that there was a causal connection indirectly between the attack of hives and the accident in that the accident brought on an anxiety state, and the latter, in turn, caused the hives.

Subsequently the plaintiff brought this action to recover damages, making no mention in his complaint of the prior settlement. As heretofore stated, the defendant pleaded settlement and release as an affirmative defense, which is now before the Court.

It is not necessary to determine at this juncture whether the ruptured disc and the attack of hives were caused by the accident. All that is to be decided at this stage is whether the plaintiff should be permitted to assert this claim in the light of the prior release. The Court is going to assume that the plaintiff is in a position to introduce *prima facie* evidence of the causal connection that would require the submission of that issue to the jury, were the plaintiff at liberty to prosecute this action in its present form. Whether he may do so depends upon the effect of the general release.

Admittedly there was no fraud, no concealment, and no unconscionable conduct on the part of the defendant and his representatives. No pressure was exerted, no persuasion exercised, and no inducement was extended by any one on the defendant's behalf to secure plaintiff's agreement to the settlement. The de-

fendant made no examination of the plaintiff's condition, but relied entirely on the statement of the plaintiff's physician and the plaintiff himself. The defendant and his representatives had no independent knowledge of the extent of the plaintiff's injuries. The settlement was not even initiated, nor was the amount suggested by the defendant. The settlement was demanded by the plaintiff, and the demand was accompanied by threat of suit. The amount for which the claim was settled was named and designated by the plaintiff. The plaintiff apparently later repented of his bargain and concluded that he had used bad judgment. He tried to repudiate the settlement and secure a cancellation of the release.

This brings us to a consideration of the pertinent principles of law. The authorities are not always at unison. We must be guided in part by the weight of authority, and in part by principle. In examining the decisions it is necessary to reconcile and distinguish many, while still others remain seemingly irreconcilable and conflicting.

First and foremost, the sanctity of contracts is one of the basic principles of all jurisprudence. It is one of the fundamental doctrines of Anglo-American law. If contracts were to be easily set aside and repudiated, one of the very bases of our law would be gone. In addition to the principle involved, there is a matter of policy that is very important in this connection. The law favors settlements, provided they are reached fairly. If releases and settlements were to be lightly ignored many defendants and many insurance companies representing them would be discouraged from ever settling claims for personal injuries, fearing that the cases might be reopened thereafter. This attitude would add much to the congested calendars of the courts. What is much more important, it would be detrimental to numerous claimants, especially those having small and reasonable claims. Many of them would be put to the delay and expense of prosecuting a lawsuit, whereas if prospective defendants felt that a settlement would not be

lightly set aside, such claims might well be adjusted at an early stage.

 There are indeed situations in which any contract and any release may be set aside. The first situation is fraud. Any contract, any document may be canceled or rescinded for fraud. None is claimed here. A contract may also be set aside for mutual mistake. On the other hand, a mutual mistake may not be lightly inferred. It must be established by evidence. A mutual mistake must be a mistake reciprocally involving both parties, a mistake independently made by each party. In this instance, however, the defendant had no independent knowledge of the extent of the plaintiff's injuries. The defendant's source of knowledge was the plaintiff himself and the plaintiff's physician. The defendant accepted and acquiesced in the diagnosis and opinion of the plaintiff's physician. In other words, the mistake, if any, was made by the plaintiff alone and, therefore, was a unilateral rather than a mutual mistake. It must be remembered in this connection that a settlement is a compromise and takes in all possibilities *pro* and *con*, past, present and future. The mistake, if any, was made by the plaintiff alone and he communicated his mistake to the defendant, who assumed that what the plaintiff represented was correct. Consequently the mistake is obviously unilateral. There is no mutual mistake.

There are a multitude of authorities on this question. The Court will limit itself to referring only to a few typical decisions, since otherwise this opinion would be extended to an inordinate length. Thus, it was stated by the Supreme Judicial Court of Massachusetts, in Tewksbury v. Fellsway Laundry, 319 Mass. 386, 65 N.E.2d 918, 919:

"It is settled in this Commonwealth that one who executes a release for consideration for the injuries then known cannot, on the subsequent discovery of injuries not known or suspected at the time of settlement, obtain a cancellation of the release on the ground of mutual mistake, and that the release is binding in the absence of fraud or concealment."

The Superior Court of New Jersey, in Reinhardt v. Wilbur, 30 N.J.Super. 502, 105 A.2d 415, 416, ruled as follows:

"The question to be determined is whether a duly executed general release may be invalidated upon the ground of mutual mistake of fact merely because an injury subsequently becomes more serious than the releasor believed it to be, or because she sustained injuries of which she was not aware, at the time of the execution of the release. The very suggestion of invalidation for such cause is contrary to firmly imbedded principles of law. We cannot shut our eyes to the realities of everyday practice. Persons involved in accidents or their representatives carry on and conclude negotiations precisely because there is uncertainty as to the extent of injuries or liability or both, and because of the uncertainty as to the outcome of any ensuing litigation. A general release duly executed and fairly obtained is a complete bar to further recovery for injuries sustained. Otherwise, the floodgates would open and not only persons like the plaintiff would seek avoidance, but also those who had paid substantial sums if supposedly serious injuries later proved to be minor."

Surely the plaintiff in this case would not contend that if there is a settlement for a substantial sum on the assumption that a very serious injury has resulted from an accident, the defendant would be able to set aside the settlement and recover back a part of the consideration if it later proved that the fears of a serious injury were unfounded. Yet the rights of the parties must be reciprocal.

The Appellate Court of Illinois, in Clancy v. Pacenti, 15 Ill.App.2d 171, 145 N.E.2d 802, 71 A.L.R.2d 77, rendered a decision on which the plaintiff largely relies. In that case however, both the plaintiff's and the defendant's physicians examined the plaintiff independently and

reached the conclusion that the plaintiff had sustained only minor injuries. Later it was ascertained that the plaintiff had a ruptured disc as a result of the accident involved in the litigation. In that case the release was set aside. The case is, however, clearly distinguishable on the ground that there was a mutual mistake, because the defendant secured his own information through his own physician, and both made the same mistake, if it was a mistake. In the course of its opinion the Court referred to the sharp economic inequality of the bargaining parties. Such a situation, of course, does not exist here. We are not dealing with a poor or ignorant claimant, because the plaintiff, as heretofore stated, is a member of the bar of high standing.

It must be noted that the decisions of the Appellate Court of Illinois, which sits in separate divisions, are far from being at unison, for in Thomas v. Hollowell, 20 Ill.App.2d 288, 155 N.E.2d 827, 829, it reached an opposite result and enunciated the following principle:

"It has always been the policy of the law to favor compromise and settlement, and it is especially important to sustain that principle in this age of voluminous litigation, particularly in traffic cases. It must be remembered that the question of liability, besides the extent of the injuries, may well be in the minds of the parties. If a release, completely effective in the form in which it is executed, is to be lightly disregarded, then the peaceful settlement of claims out of court becomes practically impossible. How many prospective litigants negotiate a settlement if the law will not give effect to their signed adjustment, with consideration paid? This is a problem which would confront lawyers every day in this state."

A similar conclusion was reached by the Supreme Court of Oregon in Wheeler v. White Rock Bottling Company of Oregon, 229 Or. 360, 366 P.2d 527, in which the plaintiff thought that he had sustained a minor back injury but later the exist-

ence of a ruptured disc was discovered. A like conclusion was arrived at in Gumberts v. Greenberg by the Appellate Court of Indiana, 124 Ind.App. 138, 115 N.E.2d 504. The Court there pointed out, as is the situation here, that the mistake was unilateral and not mutual, since the plaintiff thought that his injury was healed and the defendant knew nothing of it, but relied upon the plaintiff's statement, and later further injuries developed.

Many of the cases cited by the learned counsel for the plaintiff are distinguishable. Thus in Great Northern Railway Co. v. Reid, 9 Cir., 245 F. 86, the plaintiff was examined solely by the defendant's physician, who diagnosed the plaintiff's injuries as minor. Later a serious injury developed. The Court naturally held that the release should be set aside.

In Graham v. Atchison, Topeka & Santa Fe Railway Co., 9 Cir., 176 F.2d 819, the employer's physician examined the plaintiff, who was a railroad employee, urged him to return to work and stated that he would be well in 30 to 60 days. X-ray photographs were taken of the plaintiff, which revealed a crushed disc, but plaintiff was not informed of the fact and was refused access to the X-ray films. Obviously the mistake, if any, was on the part of the defendant. It was almost akin to fraud.

So, too, in Chicago & Northwestern Railway Co. v. Curl, 8 Cir., 178 F.2d 497, it was the employer's physician who diagnosed the plaintiff's injury as minor and, therefore, it can be said that the employer induced the mistake. The same situation existed in Southwest Pump & Machinery Co. v. Jones, 8 Cir., 87 F.2d 879, and in Koshka v. Missouri Pacific Railway Co., 114 Kan. 126, 217 P. 293.

There are some authorities that support the plaintiff's contention, but if we eliminate those cases that are distinguishable on their facts, those that sustain the plaintiff's position are in a minority.

The Court reaches the conclusion that there has been no mutual mistake and that the plaintiff is not entitled to se-

cure a cancellation of the settlement and of the release.

A transcript of this decision will constitute the findings of fact and conclusions of law.

The Court will grant judgment dismissing the complaint on the merits on the basis of the affirmative defense of settlement and release.