John P. RANDOLPH, Appellant,

v.

Joseph OTTENSTEIN et al., Appellees.

No. 19360.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 2, 1965.

Decided Dec. 20, 1965.

Petition for Rehearing En Banc Denied Feb. 3, 1966.

———◆———

Mr. Warren E. Miller, Washington, D. C., for appellant.

Mr. Richard W. Galiher, Washington, D. C., with whom Messrs. William E. Stewart, Jr., William H. Clarke and John H. Verchot, Washington, D. C., were on the brief, for appellees.

Before WILBUR K. MILLER, Senior Circuit Judge, and DANAHER and McGOWAN, Circuit Judges.

DANAHER, Circuit Judge:

Claiming damages for injuries alleged to have been caused on April 19, 1960 by the negligence of the appellees, the appellant, an experienced attorney, in June demanded under threat of suit, that a prompt settlement be made. When the insurance carrier requested a medical examination, the appellant testified he informed the adjuster he had just been examined by his own doctor who had taken an X-ray, and his doctor would be willing to give a written statement as to what he had found and what his diagnosis was. The adjuster accepted that arrangement, and the appellant sent the doctor's statement[1] to the adjuster.

Thereupon the appellant and the adjuster agreed upon the amounts to be ascribed to the several items of damage in the total sum of $399.48. On June 10, 1960, a release was executed by the appellant and a draft for the damages as agreed was delivered to him. Included was an item of $150, "For plaintiff's injuries."

The appellant testified that three weeks later he participated at a two-day agency hearing where fans were operating "all around the wall." He thought he had there caught a cold when he commenced to experience pain in the back of his neck and right shoulder, radiating down the right arm into his fingers. Again consulting his doctor, a course of treatment and diagnosis was undertaken which led one of the appellant's doctors to conclude that the collision had aggravated pre-existing osteoarthritic changes in the cervical spine. An attack of hives thereafter was thought to have been due to an "anxiety" state. Following an operation, the appellant recovered, and within some two months of the release he was able to resume normal activities.

Appellant sued, seeking to repudiate the settlement, obtain a cancellation of the release, and to recover damages. There was no evidence whatever that the

---

1. That statement, dated May 17, 1960, set out, in part:

"X-rays of the cervical spine revealed changes of hypertrophic arthritis. There was moderate straightening of the cervical spine. There was no evidence of fracture or dislocation.

"Mr. Randolph was started on a muscle relaxant drug. He was seen several times subsequently. His neck soreness gradually cleared without further therapy. When last seen on May 13, 1960 he stated his neck was almost fully recovered."

The reporting doctor had first seen the appellant as a patient on September 8, 1958, had treated him from time to time thereafter and had made a complete physical examination on September 16, 1959. The appellant over that period had been suffering from paresthesia in the right arm, with numbness extending into his right hand. The doctor had diagnosed the appellant's complaints as due in part to neuritis.

insurance adjuster had induced the settlement or that he had been guilty of misrepresentation in any respect. There was no evidence that the insurance carrier had knowledge of some different physical injury, or that its representative had suppressed any information material to the dealings incidental to the settlement.

The trial judge deemed it unnecessary to decide whether the appellant's complaints in July, 1960 were caused by the accident. His opinion [2] noted:

"Admittedly there was no fraud, no concealment, and no unconscionable conduct on the part of the defendant and his representatives. No pressure was exerted, no persuasion exercised, and no inducement was extended by any one on the defendant's behalf to secure plaintiff's agreement to the settlement."

The trial judge concluded that the appellant had failed to establish a basis for invalidation of the release. We think the case was properly decided.

Affirmed.

2. Randolph v. Ottenstein, 238 F.Supp. 1011, 1013 (D.D.C.1965).